**Narciso Vallez MELENDEZ, Petitioner,**

v.

**U.S. DEPARTMENT OF JUSTICE and Immigration and Naturalization Service, Respondents.**

**No. 34, Docket 89–4119.**

United States Court of Appeals, Second Circuit.

Argued Aug. 31, 1990.

Decided Feb. 15, 1991.

Richard Mancino, New York City (Lawrence O. Kamin, Wilkie Farr & Gallagher, New York City, of counsel; Anne Pilsbury, Central American Legal Assistance, Brooklyn, N.Y., also of counsel), for petitioner.

Timothy MacFall, Sp. Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., Marla Alhadeff, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for respondents.

Before FEINBERG and CARDAMONE, Circuit Judges, and RE, Chief Judge *.

CARDAMONE, Circuit Judge:

This case concerns petitions by a citizen of El Salvador for asylum and withholding of deportation. Petitioner claims he has suffered repeated persecution in his native country and fears he will be persecuted further if forced to return there.

* Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

We are called upon to elaborate on the legal tests governing applications for asylum and withholding of deportation under §§ 208(a) and 243(h) of the Immigration and Nationality Act of 1952 (Act), 8 U.S.C. §§ 1158(a), 1253(h), under which petitioner Narciso Vallez Melendez claims he is entitled to relief. We must also decide the proper standard of review for decisions by the United States Immigration and Naturalization Service's (INS) Board of Immigration Appeals (Board of Appeals or Board) denying such relief. Ordinarily, we would then proceed to determine whether the Board's decision in this case withstands scrutiny under that standard of review. In light of a settlement agreement entered into by the government, which we will take up at the end of this opinion, this matter is remanded to the Immigration Service for a new hearing.

## FACTS

The following facts were established through petitioner's sworn application and through testimony in hearings before an INS judge. Narciso Vallez Melendez is a 40–year–old Salvadoran national, who in his early 20s worked as a member of "La Uno", a political party organized to secure free and democratic elections in El Salvador. His work during the years 1972–74 consisted of distributing leaflets to the public. The political campaign was successful, as La Uno's candidate for President, Jose Napoleon Duarte, was elected to that office, though he was later deposed by force. The La Uno party is now called the Christian Democratic Party. Under its banner Mr. Duarte later regained the presidency, and until his recent death, he served as president of El Salvador.

For the eight-year period from 1974 to 1982, petitioner alleges he was threatened. Some of his La Uno comrades were jailed, murdered, or disappeared. He testified that the continuous threat from the government security forces forced him to leave his home and family and move from place to place. He also stated he was "hassled" by guerilla forces and accused of being a sympathizer of both sides, though he sought to stay neutral in the conflict. Vallez claims that in July 1979 his brother—also a member of La Uno—was killed by the military because of his political activities and that in August 1981 his common-law wife was murdered by a soldier in the El Salvadoran military.

Two members of religious organizations who had spent time in La Libertad—the area where Vallez resided in El Salvador—testified that around the time his family members were allegedly murdered, the El Salvadoran military and so-called "squadrons de muerte" (death squads) kidnapped and killed numerous individuals throughout the country. The church organizations gave assistance to those being threatened by helping them to get out of the country.

Vallez testified that shortly after his wife's death in 1981 he left El Salvador via Guatemala and Mexico and came for the first time to the United States. Three months later he was arrested and deported by the INS. Upon arrival back in El Salvador in October 1982, he asserts he was detained at the airport by government soldiers, who interrogated and robbed him, and threatened him with imprisonment and death. According to Vallez, the military told him he would be killed if they saw him in the San Salvador airport again. After this incident, he stayed in El Salvador for seven months, and relocated five times to avoid danger. After an "investigator" threatened to kill him he left his home country in May 1983, and returned illegally to the United States, where he sought asylum. Since November 1984, petitioner has resided in Brooklyn, New York. Vallez is the father of two children, one 16 and the other eight years old, both of whom still reside in El Salvador, where he owns a house and an unspecified acreage of land.

## THE PROCEEDINGS BELOW

The immigration judge in the administrative proceedings orally denied Vallez' applications for asylum and withholding of deportation. Upon appeal, the Board of Immigration Appeals concluded—without differentiating between facts supporting its findings under § 208(a) and § 243(h)—that

petitioner had failed to meet his burden under both sections. Because the Board specifically stated it was making a *de novo* determination on both the law and facts, the specific findings of the immigration judge are not relevant.

The Board found that no details were presented at the hearing or in the sworn application form petitioner completed regarding the deaths of his brother and common-law wife that showed a relation between their deaths and his claims. The Board stated it had "no evidence before it concerning the crucial aspects of why these people were killed." It viewed the actions of the soldiers at the airport on petitioner's return to El Salvador in October 1982 as simply an individual attempt on their part to extort money, not to persecute petitioner for his past political activities.

The Board stated there was insufficient evidence to support petitioner's assertion he was threatened, noting that he failed to specify the nature of the threats made against him during his years in El Salvador. Although petitioner was allegedly threatened because of his political activities in La Uno from 1972 to 1974, he continued to reside in La Libertad for the following eight years and was never physically injured, despite his claim that he was forced to move at least five times. The Board found that the distribution of political literature in 1972–74 was too remote to place him in danger at the present time. Vallez also failed to identify the "investigator" who threatened him immediately prior to his departure from El Salvador, and explain why the "investigator" threatened him or the nature of the threat.

The Board also discounted the corroborating testimony of two church workers regarding the nature of violence against politically active Salvadorans generally. Both of them were in El Salvador from August until December 1980, and each of them spent a week there in July 1984. Those witnesses' testimony was general in nature and referred to matters of common knowledge, that is, that El Salvador is unfortunately in a state of civil war that has resulted in murder, torture, disappearance and detention of scores of innocent citizens. The Board concluded that the testimony showed only that "most people who belong to an organization receive threats, and that they move around to minimize the danger to themselves. Hence, [petitioner] was certainly not alone in receiving such threats." None of their testimony related to petitioner himself.

Consequently, though the Board stated it did "not have any reason to disbelieve [petitioner's] testimony," it went on to conclude: "there are simply too many important questions left unanswered. As [petitioner] has failed to carry his burden of proof and persuasion in his claim, we find we must dismiss the appeal." We turn now to a discussion of the law respecting asylum and deportation.

## DISCUSSION

### I The Legal Framework

#### A. Section 208(a): The "Well–Founded Fear" of Persecution Standard

Section 208(a) of the Act, 8 U.S.C. § 1158(a) (1988), authorizes a grant of asylum to an alien who qualifies as a "refugee", which is defined as

any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). Upon a showing of a "well-founded fear of persecution" the Attorney General may, in his discretion, grant asylum pursuant to § 208(a). In this two-step procedure, an alien must first show he faces persecution or has a well-founded fear of persecution, and—having thus established refugee status—second, must seek asylum, which is granted in the discretion of the attorney general. Political asylum—the ultimate relief—is there-

fore discretionary. *See Carcamo–Flores v. INS,* 805 F.2d 60, 65 (2d Cir.1986).

The Supreme Court recently declined to define the precise contours of the well-founded fear standard. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 448, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987). The Court had previously indicated, without elaboration, that an applicant might attain this status by showing that persecution was a "reasonable possibility." *See INS v. Stevic,* 467 U.S. 407, 424–25, 104 S.Ct. 2489, 2497–98, 81 L.Ed.2d 321 (1984) (terming this a moderate position). We have held that this standard is satisfied under § 208(a) when an alien establishes that " 'a reasonable person in her circumstances would fear persecution if she were to be returned to her native country.' " *Carcamo–Flores,* 805 F.2d at 68 (quoting *Guevara Flores v. INS,* 786 F.2d 1242, 1249 (5th Cir.1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987)). Well-founded fear involves both a subjective and an objective component. The former may be based on the applicant's reaction to events that impinge on him personally; but to make it a well-founded fear, there must be other proof or objective facts that lend support to the applicant's subjective fear. *See* 805 F.2d at 64.

■ In other words, once subjective fear is demonstrated, the applicant need only show that such fear is grounded in reality to meet the objective element of the test. "Documentary evidence of past persecution or a threat of future persecution will usually suffice to meet the 'objective component' of the evidence requirement." *Del Valle v. INS,* 776 F.2d 1407, 1411 (9th Cir.1985). In the absence of documentary proof, the applicant's testimony will be enough if it is "credible, persuasive, and refers to '*specific* facts that give rise to an inference that the applicant has been or has good reason to fear that he or she will be singled out for persecution.' " *Id.* (quoting *Cardoza–Fonseca v. INS,* 767 F.2d 1448, 1453 (9th Cir.1985), *aff'd,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (emphasis in original)).

In deciding petitioner's § 208(a) claim, the Board applied the standard of proof adopted by the Fifth Circuit in *Guevara–Flores,* 786 F.2d at 1249; "an applicant for asylum [under § 208(a)] has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution." Inasmuch as we have accepted this standard for § 208(a) claims in *Carcamo–Flores,* petitioner's claim that the Board of Appeals applied the wrong standard in ruling on his asylum application must fail.

B. *Section 243(h): The "Clear Probability" of Persecution Standard*

■ In contrast to § 208(a), § 243(h) of the Act provides for the mandatory withholding of deportation in certain situations. It states

> The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1253(h)(1) (1988).

In *Cardoza–Fonseca,* the Supreme Court ruled that the standard of proof under § 208(a) was materially different from the more stringent burden of § 243(h), though it did not elaborate on the distinction. 480 U.S. at 448 & n. 31, 107 S.Ct. at 1221 & n. 31 ("How 'meaningful' the difference between the two standards may be is a question that cannot be fully decided in the abstract, but the fact that Congress has prescribed two different standards in the same Act certainly implies that it intended them to have significantly different meanings."). The Supreme Court has held that to succeed under § 243(h) an alien must establish a "clear probability" that such a threat exists, i.e., that it is "more likely than not that the alien would be subject to persecution." *Stevic,* 467 U.S. at 413, 424, 104 S.Ct. at 2492, 2498. In the instant matter the Board properly applied this "more likely than not" standard to petitioner's claim that his deportation should be

withheld. We next address the parties' disagreement over the appropriate standard of review of the agency's findings of fact.

## II The Standard of Review

Petitioner believes the Board's decisions under both §§ 208(a) and 243(h) of the Act must be examined to see if they are supported by substantial evidence. The INS, on the other hand, urges that we review the Board's decisions under the more deferential abuse of discretion standard. In analyzing this problem we turn to three important sources for guidance: The Act, our prior decisions, and decisions of other courts that have considered the issue.

### A. *The Immigration Act*

■ We begin analysis with § 106, 8 U.S.C. § 1105a(a) (1988), which sets forth the jurisdictional basis for review of all final orders of deportation made in administrative proceedings against aliens pursuant to 8 U.S.C. § 1252(b) ("Proceedings to determine deportability"). It extends exclusive jurisdiction to the courts of appeals to review ancillary decisions made in the course of deportation proceedings, including decisions on applications for asylum under § 208(a) and for withholding of deportation under § 243(h). *See Foti v. INS*, 375 U.S. 217, 229, 84 S.Ct. 306, 314, 11 L.Ed.2d 281 (1963) ("[I]t seems rather clear that all determinations made during and incident to the administrative proceeding conducted by a special inquiry officer, and reviewable together by the Board of Immigration Appeals, such as ... orders denying the withholding of deportation under § 243(h), are likewise included within the ambit of the exclusive jurisdiction of the Courts of Appeals under § 106(a)").

A subdivision of § 106 contains language strongly suggesting that INS determinations concerning an alien's eligibility for asylum or for withholding of deportation should be reviewed under the substantial evidence standard. Subsection (a)(4) of § 106 provides that a petition for review of a deportation order shall be determined solely upon the administrative record "and the Attorney General's findings of fact, if supported by *reasonable, substantial, and probative evidence* on the record considered as a whole, shall be conclusive." 8 U.S.C. § 1105a(a)(4) (emphasis added).

Since review of asylum and withholding of deportation decisions is made possible by § 106(a) of the Act, it follows from its language and structure that the substantial evidence standard of review is applicable as set forth in the language of subsection (a)(4). *See Carvajal–Munoz v. INS*, 743 F.2d 562, 567–68 (7th Cir.1984) (concluding that the substantial evidence standard of § 106(a)(4) applies to § 208(a) even though under the two-step procedure the ultimate granting or denial of asylum—that is, the second step—is within the discretion of the Attorney General, and hence is reviewed under the abuse of discretion standard).

Although we have not had occasion to address squarely the standard of review to be applied to a denial of an application for asylum or withholding of deportation, we think the substantial evidence test applies to the Board's findings of fact under these statutory provisions. *See Yiu Sing Chun v. Sava*, 708 F.2d 869, 876 (2d Cir.1983) (dicta); *see also Maikovskis v. INS*, 773 F.2d 435, 446 (2d Cir.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986).

### B. *Decisions in Other Circuits*

1. *Asylum Cases.* A number of our sister circuits apply the substantial evidence test to the threshold finding of whether the alien has established a "well-founded fear" of persecution qualifying that person for refugee status. The ultimate denial of asylum is reviewed under an abuse of discretion standard. *See Perlera–Escobar v. Executive Office for Immigration.* 894 F.2d 1292, 1296 (11th Cir.1990) (factual determination that alien is statutorily ineligible for asylum is reviewed under the substantial evidence test); *Ipina v. INS*, 868 F.2d 511, 513 (1st Cir.1989) (decision to deny refugee status is reviewed for substantial evidence; decision to deny asylum is reviewed for abuse of discretion); *Arteaga v. INS*, 836 F.2d 1227, 1228 (9th

Cir.1988) (factual findings reviewed under substantial evidence standard); *Cruz–Lopez v. INS,* 802 F.2d 1518, 1519 n. 1 (4th Cir.1986) (same as *Ipina* ); *Espinoza–Martinez v. INS,* 754 F.2d 1536, 1539 (9th Cir. 1985) (same as Ipina); *Youkhanna v. INS,* 749 F.2d 360, 362 n. 2 (6th Cir.1984) (ultimate denial of asylum reviewable under abuse of discretion standard); *Carvajal–Munoz,* 743 F.2d at 567–68 (7th Cir.1984) (substantial evidence must support finding regarding refugee status; ultimate denial of asylum reviewed for abuse of discretion); *but see Doe v. INS,* 867 F.2d 285, 290 (6th Cir.1989) (apparently adopting "clearly erroneous" as standard of review for Board's decision that applicant had "well-founded fear" for purposes of § 208(a)).

Decisions in the Fifth and Eighth Circuits are inconclusive. *Compare Campos–Guardado v. INS,* 809 F.2d 285, 286–89 (5th Cir.), *cert. denied,* 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987) (affirming the Board because "the record reflects substantial evidence to support the Board's conclusions that Ms. Campos is not entitled to withholding of deportation and is not eligible for a discretionary grant of asylum," but later noting that "the ultimate denial of asylum" cannot be disturbed "absent a showing that such action was arbitrary, capricious, or an abuse of discretion") (quoting *Young v. INS,* 759 F.2d 450, 455 n. 6 (5th Cir.), *cert. denied,* 474 U.S. 996, 106 S.Ct. 412, 88 L.Ed.2d 362 (1985)) *with Farzad v. INS,* 802 F.2d 123, 124 (5th Cir.1986) (per curiam) ("substantial evidence" supports findings that alien failed to establish well-founded fear of persecution or extreme hardship resulting from deportation); *see also Minwalla v. INS,* 706 F.2d 831, 834 (8th Cir.1983) (affirming Board's denial of motion to reopen deportation proceedings under abuse of discretion standard but not addressing what standard of review it would apply if reviewing a Board decision made after it had considered the alien's asylum application, heard evidence, and made determinations on whether he had demonstrated a well-founded fear of persecution). Only the Third Circuit appears to apply the abuse of discretion standard of review to all aspects of an asylum determination under § 208(a). *See Sankar v. INS,* 757 F.2d 532, 533 (3d Cir.1985).

Our analysis of the statutes and applicable precedents leads us to join with the majority of our sister circuits. In this case, and others in a similar procedural posture, neither the hearing officer nor the Board purports to exercise any discretion in deciding whether petitioner should be granted asylum. Rather, the Board, based upon its review of the evidence that petitioner has or has not made the requisite showing of a well-founded fear of persecution, makes a factual finding. *See generally,* 8 C.F.R. Pt. 208 (1990). This factual finding is not the ultimate discretionary decision of whether to grant asylum. That determination, which is reserved by statute to the Attorney General, is based upon the factual finding. *See Cardoza–Fonseca,* 480 U.S. at 443, 107 S.Ct. at 1219 ("an alien who satisfies the applicable standard under § 208(a) does not have a *right* to remain in the United States; he or she is simply *eligible* for asylum, if the Attorney General, in his discretion, chooses to grant it") (emphasis in original).

Such factual findings must be supported by substantial evidence and are appropriately reviewed under that standard. *Cf. Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971) (agency findings arising from public, record-producing proceedings, as distinguished from quasi-legislative hearings, are normally subject to substantial evidence standard of review); *Wong Wing Hang v. INS,* 360 F.2d 715, 717 (2d Cir.1966) (Friendly, J.) ("factual findings on which a discretionary denial of suspension [of deportation] is predicated must pass the substantial evidence test"). Although courts give substantial deference to these findings of fact by the Board, *see Maikovskis,* 773 F.2d at 446, *citing Wong Wing Hang,* 360 F.2d at 717, the substantial evidence test itself incorporates this deference. *See McMullen v. INS,* 658 F.2d 1312, 1317 (9th Cir.1981) ("Application of the substantial evidence test does not mean ... the reviewing court must review the facts *de novo.* The principle of deference

to agency expertise is still applicable and our inquiry is limited to a review of the record to determine whether the agency's determination is substantially supported"). To review a Board of Appeals decision for an abuse of discretion when its decision involves no exercise of discretion would fly in the face of common sense.

Therefore, we hold that though the ultimate denial of asylum in applications brought under § 208(a) of the Act is reviewed for an abuse of discretion, the threshold finding of fact of whether the alien has established a well-founded fear of persecution qualifying that person for refugee status is reviewable under the substantial evidence test.

■ 2. *Withholding of Deportation Cases.* Most of the circuits employ the substantial evidence test in withholding of deportation cases. The process which led the Ninth Circuit to apply this standard is particularly instructive. Before the enactment of the Refugee Act of 1980, Pub. L. No. 96–212, 94 Stat. 102 (1980), § 243(h) provided that the Attorney General could withhold deportation if, *in his opinion,* the alien would be subject to persecution on account of race, religion or political opinion. 8 U.S.C. § 1253(h) (1952). Because of the pre–1980 Act's grant of unlimited discretion, the Ninth Circuit refused to apply the substantial evidence test when reviewing a Board's finding of ineligibility under § 243(h). *See, e.g., Kasravi v. INS,* 400 F.2d 675, 677 (9th Cir.1968). In McMullen it was held that the 1980 amendments to § 243(h), which removed the absolute discretion formerly vested in the Attorney General and made asylum mandatory when an alien showed that he would be persecuted, warranted adopting the substantial evidence standard for review of the factual findings in withholding of deportation cases. *McMullen,* 658 F.2d at 1316. We agree with that reasoning.

■ There is a concrete difference between findings of fact and discretionary decisions based on those findings. The two kinds of agency determinations warrant different standards of review. In a withholding of deportation case, if an alien establishes that there is a clear probability that he or she would face persecution if returned to the country of nationality, the INS must grant asylum. *See Cardoza–Fonseca,* 480 U.S. at 429, 107 S.Ct. at 1212 ("the 1980 Act removed the Attorney General's discretion in § 243(h) proceedings"). Thus, a grant of relief under § 243(h) requires no exercise of INS discretion. Hence, a standard that reviews the INS action for abuse of discretion is entirely inappropriate.

As a consequence, we hold that INS decisions withholding deportation are also reviewed under the substantial evidence standard.

### III  The Decision of the Board of Immigration Appeals

■ Ordinarily we would at this point review the Board of Immigration Appeals' decision to determine if substantial evidence supported its findings. But as a result of an article entitled *U.S. Settles Suit on Ousting Aliens* which appeared in The New York Times on December 20, 1990 (B18, Col.1), we asked the parties for further briefing respecting it.

From the papers now before us it appears that there is a stipulated settlement agreement approved January 31, 1990 by the United States District Court in *American Baptist Churches v. Richard L. Thornburgh, et al.,* Civ. No. C–85–3255 (N.D.Cal.), affording class members from El Salvador and Guatemala an opportunity to have their asylum cases reheard, if they were potential asylees whose cases were heard and decided since 1980, under regulations newly enacted to protect against improper influences in the hearing process by other federal executive departments.

The settlement agreement resulted from a class action alleging that the Immigration Service has not been deciding asylum cases involving Salvadorans in a neutral, non-political manner, as required by law. In accordance with the settlement agreement, the government has moved to stay this proceeding, a motion opposed by petitioner, until petitioner has had an opportunity to

seek a *de novo* determination from the INS on his application for asylum. Under the settlement agreement, the *de novo* determination, though presumably free from extraneous influences, will be unappealable. The agreement also provides that in the event asylum is denied, a class member whose case is already pending in the federal courts is "not precluded" from moving to reopen his proceeding before the INS.

Although the government cites "judicial economy" as the principal reason for staying this appeal, we see little economy in retaining a case seeking redetermination by the INS during the probably lengthy period in which the agency conducts a separate *de novo* determination. Moreover, if the new agency determination were to result in denial of asylum, there is a strong likelihood that the agency proceedings— which are the subject of this appeal—would be reopened and supplemented in any event, perhaps changing the factual issues to be reviewed on appeal. In addition, the terms of the settlement agreement indicate that there is at least a reasonable probability that the playing field was tilted against petitioners such as Vallez Melendez.

Considering all these circumstances, we believe that the best course is to decline to pass on the merits of this case, deny the stay and remand the case to the INS for a new hearing, noting that we do not intend thereby to limit in any way the rights or benefits available to petitioner under the settlement agreement.

To guide the Board in its deliberations, we note one respect in which its prior decision was flawed as a matter of law. At the deportation hearing, two church workers familiar both with El Salvador and with La Libertad—the province where Vallez owned property and lived with his family—testified about the brutal conditions endured by citizens in that war-torn country. They described the nature of the danger to Salvadorans from the military and the more anonymous "death squads," particularly the frequency with which politically-involved male Salvadorans were murdered or forced to flee. The Board concluded that this testimony showed only that "most peo-

ple who belong to an organization receive threats, and that they move around to minimize the danger to themselves. Hence, [petitioner] was certainly not alone in receiving such threats."

A conclusion that evidence of widespread persecution of citizens with prior political involvement undercuts an individual alien's claim for asylum is flawed as a matter of both law and logic. We and other courts have expressly held that objective evidence of violent conditions in the subject country is especially probative of a well-founded fear. *Carcamo–Flores*, 805 F.2d at 64 (journalistic accounts of persecution sufficient to establish that alien's subjective fear of persecution grounded in reality); *see also Del Valle*, 776 F.2d at 1413 (documentary evidence may support claim by proving threat of persecution is "a serious one"); *Zavala–Bonilla v. INS*, 730 F.2d 562, 564 (9th Cir.1984) (general information concerning oppressive conditions in country of origin is relevant to support specific information relating to an individual's well-founded fear of persecution); *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1285–86 (9th Cir.1984) (same); *Carvajal–Munoz*, 743 F.2d at 574 (same).

More fundamentally, the Board's conclusion turns logic on its head. Under its reasoning if everybody in the country is being persecuted for their political beliefs, then no one may seek asylum on account of persecution. Such a view contravenes Congress' purpose in the Act. The law is clear that a specific threat against an individual is sufficient to trigger a withholding claim, even though the threat reflects a general level of violence in the country. *See Bolanos–Hernandez*, 767 F.2d at 1284–85.

## CONCLUSION

When it appears, as here, that extraneous influences—not appearing in the record—may have determined the outcome of an administrative proceeding, expending judicial effort in an attempt to analyze the record is an exercise in futility, because the administrative proceeding in such case would simply be a charade. Although we understand that the settlement agreement and the newly enacted regulations are de-

signed to remedy this situation, nonetheless, in light of the distinct possibility that extrajudicial matters influenced the administrative result and the likelihood that the record below would be reopened in any event, we deny the motion for a stay, grant the petition for review and remand the matter to the Immigration Service for a new hearing.

Petition granted and case remanded.