Carmen **GOMEZ**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

**No. 259, Docket 91–4025.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 26, 1991.

Decided Oct. 28, 1991.

Mark T. Kenmore, Buffalo, N.Y. (Gerald P. Seipp, Serotte, Reich & Seipp, of counsel), for petitioner.

Diogenes P. Kekatos, Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., James A. O'Brien, III, Sp. Asst. U.S. Atty., Thomas A. Zaccaro, Asst. U.S. Atty., S.D.N.Y., of counsel), for respondent.

Before LUMBARD, WINTER and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Carmen Gomez, a thirty-year-old native of El Salvador, petitions for review of an order of deportation and denial of applications for asylum and withholding of deportation by the Immigration and Naturalization Service ("INS"). While Gomez does not contest her deportability, she claims that the Board of Immigration Appeals ("BIA") erred by concluding that she had failed to meet the statutory qualifications necessary for withholding of deportation and political asylum. Specifically, Gomez contends that because she was previously raped and beaten in El Salvador, she has established that she has at least a well-founded fear of persecution if she is returned to that country. Accordingly, she claims that she is, at the very least, a candidate for political asylum. In opposition, the INS argues that regardless of Gomez' tragic encounters in El Salvador, she has failed to prove that she is a refugee, i.e., that her fear of future persecution is based on her race, religion, nationality, political opinion or membership in a particular social group, and thus she has failed to qualify for political asylum or withholding of deportation. Consequently, the INS claims that the BIA correctly concluded that, as a matter of law, Gomez was not entitled to asylum or withholding of deportation.

For the reasons set forth below, we dismiss Gomez' petition for review.

## BACKGROUND

Gomez was born in El Salvador and spent the first eighteen years of her life there. Her mother died when she was five years old, leaving her without any living relatives. Upon her mother's death, a woman named Tarcila assumed guardianship.

During Gomez' youth, she was the victim of guerilla violence. Between the ages of twelve and fourteen, Gomez was raped and beaten by guerilla forces on five separate occasions. Gomez claims that on each of the five occasions, the guerrillas threatened her life and vandalized her home.

Gomez remained in El Salvador until she was eighteen, at which time she and Tarcila fled to the United States. In August 1979, Gomez entered the country illegally near San Ysidro, California. Thereafter, she made her way to New York. During the next nine years, Gomez worked at a number of odd jobs, such as baby sitter and beauty shop attendant, in order to support herself. However, in 1988, Gomez was unable to pay her rent and began selling cocaine. Gomez admits that she sold drugs for a period of three months.

On December 21, 1988, a Queens County grand jury indicted Gomez for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. Two days later, she was indicted on two additional counts of criminal sale of a controlled substance in the third degree, and in March 1989 she was indicted for criminal possession of a controlled substance in the third, fourth and seventh degrees.

In May 1989, Gomez pleaded guilty on the first indictment to criminal sale of a controlled substance in the fifth degree and on each of the other two indictments to criminal sale of a controlled substance in the third degree. The Supreme Court, Queens County, accepted the pleas and sentenced Gomez to a term of imprisonment of one to three years on each conviction, with sentences to run concurrently.

Thereafter, on February 14, 1990, the INS issued an Order to Show Cause seeking Gomez' deportation. An Immigration Judge ("IJ") then conducted a hearing at which Gomez conceded that she was deportable based on her illegal entry into the United States. Gomez denied, however, that she was deportable as an aggravated felon. After Gomez declined to designate a destination to which she could be deported, the INS requested that the IJ designate El Salvador. At that point, Gomez applied for political asylum and withholding of deportation. The IJ concluded that Gomez was ineligible for either of these forms of relief

and ordered that she be deported to El Salvador.

Gomez appealed this decision to the BIA, which upheld the IJ's deportation order and dismissed the appeal. She now petitions this Court for review of the BIA's decision.

## DISCUSSION

An alien seeking political asylum or withholding of deportation bears the burden of establishing his or her eligibility for such remedies. *See* 8 C.F.R. §§ 208.5 & 242.-17(c) (1990). Here, the IJ and the BIA both concluded that Gomez failed to meet her burden of proof. We agree.

■ We first address whether Gomez has satisfied her burden with regard to political asylum. To obtain political asylum, an alien must make a threshold showing that he or she is a refugee. *See* 8 U.S.C. § 1158(a) (1988). Congress has defined a refugee as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

8 U.S.C. § 1101(a)(42)(A) (1988). "Thus, the 'persecution or well-founded fear of persecution' standard governs the Attorney General's determination whether an alien is eligible for asylum." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 428, 107 S.Ct. 1207, 1211, 94 L.Ed.2d 434 (1987) (footnote omitted). Even if the alien can prove that he or she is a refugee, however, the Attorney General retains the discretion to deny the alien's application for political asylum. *See* 8 U.S.C. § 1158(a); *Cardoza–Fonseca*, 480 U.S. at 428 n. 6, 107 S.Ct. at 1211 n. 6; *Melendez v. United States Dep't of Justice*, 926 F.2d 211, 214–15 (2d Cir.1991). Because the BIA concluded that Gomez failed to show that she had a well-founded fear of persecution, and thus was a refugee, it did not consider whether Gomez merited a discretionary grant of asylum.

■ Gomez contends that the IJ and the BIA erred by concluding that she had not established a well-founded fear of persecution. Well-founded fear consists of both a subjective and an objective component. *See Melendez*, 926 F.2d at 215. An alien may satisfy the subjective prong by showing that events in the country to which he or she will be deported have personally or directly affected him or her. *See id.* To satisfy the objective component, the applicant for asylum must submit documentary evidence or testimony alleging specific facts from which it can be inferred that he or she may be singled out for persecution on the basis of his or her race, religion, nationality, political opinion or membership in a particular social group. *See id.; Del Valle v. INS*, 776 F.2d 1407, 1411 (9th Cir.1985). Essentially, the alien must produce some evidence connecting his or her subjective fear to his or her membership in one of the five enumerated categories.

The BIA concluded that Gomez did not assert a well-founded fear of persecution and thus could not be considered a refugee. It stated: "[A]fter a careful review of the entire record including the testimony surrounding the incidents during which [Gomez] was beaten and raped by guerrillas, we find that [Gomez] has failed to demonstrate that the guerrillas are inclined or will seek to harm her based on her association with a particular social group or on account of any other ground enumerated in the Act." Jt.App. at 12–13.

■ In reviewing the BIA's finding that an alien has not established a well-founded fear of persecution, this Court applies a substantial evidence test. *See Melendez*, 926 F.2d at 218. In this case, the only evidence that Gomez presented to support her claim of well-founded fear was that she had previously been brutalized by Salvadoran guerillas during her youth. Gomez argues that by virtue of these prior attacks she became a member of a social group, *i.e.*, women who have been previously battered and raped by Salvadoran gueril-

las. Drawing on this, she asserts that this discrete group is subject to, and singled out for, persecution in El Salvador.

■ The phrase "particular social group" has been defined to encompass "a collection of people closely affiliated with each other, who are actuated by some common impulse or interest." *Sanchez–Trujillo v. INS*, 801 F.2d 1571, 1576 (9th Cir. 1986). A particular social group is comprised of individuals who possess some fundamental characteristic in common which serves to distinguish them in the eyes of a persecutor—or in the eyes of the outside world in general. *See id.; see also De Valle v. INS*, 901 F.2d 787, 793 (9th Cir. 1990); *Ananeh–Firempong v. INS*, 766 F.2d 621, 626 (1st Cir.1985) (" 'A "particular social group" normally comprises persons of similar *background*, habits or *social status*.' "). Like the traits which distinguish the other four enumerated categories—race, religion, nationality and political opinion—the attributes of a particular social group must be recognizable and discrete. Possession of broadly-based characteristics such as youth and gender will not by itself endow individuals with membership in a particular group. *See, e.g., Sanchez–Trujillo*, 801 F.2d at 1574–77; *cf. Vides–Vides v. INS*, 783 F.2d 1463, 1467 (9th Cir.1986); *Zepeda–Melendez v. INS*, 741 F.2d 285, 290 (9th Cir.1984); *Chavez v. INS*, 723 F.2d 1431, 1434 (9th Cir.1984).

Here, Gomez' claim that she is a member of a particular social group was properly rejected. As the BIA noted, Gomez failed to produce evidence that women who have previously been abused by the guerillas possess common characteristics—other than gender and youth—such that would-be persecutors could identify them as members of the purported group. Indeed, there is no indicatation that Gomez will be singled out for further brutalization on this basis. Certainly, we do not discount the physical and emotional pain that has been wantonly inflicted on these Salvadoran women. Moreover, we do not suggest that women who have been repeatedly and systematically brutalized by particular attackers cannot assert a well-founded fear of persecution. We cannot, however, find that Gomez has demonstrated that she is more likely to be persecuted than any other young woman. Accordingly, because Gomez has not presented evidence that she has a fear of persecution on account of her race, religion, nationality, political opinion or membership in a particular social group, she has not proven her status as a refugee.

■ Notwithstanding this determination, Gomez contends that a recent congressional enactment, permitting qualified Salvadoran nationals to obtain temporary protected status in the United States, *see* Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978, 5036 (codified in scattered sections of 8 U.S.C.) ("Immigration Act"), creates a presumption that all Salvadorans are refugees. In 1990, Congress enacted a statute permitting the Attorney General to grant temporary protected immigration status to aliens who are nationals of countries that are, among other things, in the midst of ongoing armed conflicts. *See* 8 U.S.C.A. § 1254a (West Supp.1991). Additionally, Congress enacted Section 303 of the Immigration Act which specified El Salvador as one such country and provided that Salvadoran nationals were to be afforded temporary protected status for the eighteen months beginning January 1, 1991. To be eligible for temporary protected status, an alien may not have been "convicted of any felony or 2 or more misdemeanors committed in the United States." *See* 8 U.S.C.A. § 1254a(c)(2)(B). As a result of Gomez' New York State convictions for criminal possession and sale of a controlled substance, she is clearly ineligible for temporary protected status. Nevertheless, Gomez argues that congressional recognition of the plight of Salvadorans through Section 303 should be considered to have lessened the burden on Salvadoran aliens to prove that they have a well-founded fear of persecution. Essentially, Gomez argues that by enacting Section 303, Congress made satisfaction of the objective prong of the well-founded fear test unnecessary. We disagree.

Section 303 was designed to supplement—rather than eviscerate or erode—

well-established immigration law concerning political asylum and withholding of deportation. *Cf.* Statement by President of the United States Upon Signing S. 358, 26 Weekly Comp.Pres.Doc.1946 (Dec. 3, 1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6801. If we accept the meaning that Gomez imputes to the section—that it lessens the burden of proof for obtaining asylum—all Salvadorans eligible for temporary protected status would qualify for political asylum. Clearly, this was not Congress' intent. Indeed, Congress could have chosen to recognize explicitly that all Salvadorans were eligible for political asylum, but it did not do so. Consequently, we find that Section 303 does not alleviate the burden on Salvadoran nationals to prove their eligibility for political asylum. Accordingly, the grant of temporary status to other Salvadoran nationals does not assist Gomez in establishing her claims. We find, therefore, that the BIA did not err by concluding that Gomez has failed to prove her eligibility for asylum.

■ We next address Gomez' claim for withholding of deportation. In order to obtain withholding of deportation, an alien must show that his or her "life or freedom *would be* threatened in [the] country [to which he or she will be deported,] on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1) (1988) (emphasis added). Essentially, an alien seeking withholding of deportation must establish a "clear probability" that a threat to his or her safety exists. *See INS v. Stevic,* 467 U.S. 407, 413, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984). Since this burden of proof is more stringent than that placed on an alien seeking to establish qualification for political asylum, an alien cannot obtain withholding of deportation unless he or she is eligible for political asylum. *See Cardoza–Fonseca,* 480 U.S. at 443–44, 107 S.Ct. at 1219–20. Accordingly, we find that because Gomez has failed to establish her eligibility for political asylum, the BIA correctly concluded that she is not entitled to withholding of deportation as a matter of law.

■ Alternatively, Gomez contends that she is entitled to reopen her deportation hearings as a result of a class action settlement agreement between the government and the class of Salvadoran refugees who were in the United States as of September 19, 1990. *See American Baptist Churches v. Thornburgh,* 760 F.Supp. 796 (N.D.Cal. 1991). The settlement agreement, which was approved by a federal district court judge, permits each class member to obtain a *de novo* asylum hearing before an Asylum Officer, provided that the class member has not been convicted of an aggravated felony. *See id.* at 799. Gomez argues that her New York convictions are not aggravated felonies and that she is thus a member of the class entitled to the benefits of the settlement agreement. Gomez' claim, however, is not properly before us, since the BIA did not rule on this issue below. *See, e.g., Cheng Fan Kwok v. INS,* 392 U.S. 206, 215–16, 88 S.Ct. 1970, 1975–76, 20 L.Ed.2d 1037 (1968). Moreover, it appears that Gomez has raised this argument before the United States District Court for the Western District of New York, *see Gomez v. Ingham, District Director, United States INS,* Civ. No. 91–248–A (W.D.N.Y.1991), but did not consolidate that action with the proceeding underlying this case.

## CONCLUSION

We have examined all of Gomez' remaining contentions and find them to be without merit. Based on the foregoing, we dismiss Gomez' petition.