

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-17-2009

# Sarkisian v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2264

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Sarkisian v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1524.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1524

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2264

ARMINE SARKISIAN,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A78-631-532
(U.S. Immigration Judge: Honorable Cary H. Copeland)

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 30, 2009

Before:  SCIRICA, *Chief Judge*, AMBRO and SMITH, *Circuit Judges*.

(Filed: April 17, 2009)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Armine Sarkisian, a native of Armenia, arrived in the United States on May 21,

2001, with a passport in someone else's name.  She was detained and charged with

removability for seeking admission to the United States through fraud or willful misrepresentation, 8 U.S.C. § 1182(a)(6)(C)(i), and for not having a valid entry document at the time she sought admission into the United States, 8 U.S.C. § 1182(a)(7)(A)(i)(I). Sarkisian did not contest these charges, but she sought asylum and requested withholding of removal.

Sarkisian, who was born in 1980, was orphaned as a teenager when her parents were killed in a car accident. After their death, Sarkisian lived with her uncle. In February 2001, she was abducted while on her way home from a friend's house. Three strange men held her for five hours against her will. They tied her up, tore her clothes, left her partially undressed, and told her she would be their slave and would work for them as a prostitute. The men knew personal details about Sarkisian and her family, including that she lived with her uncle and that the uncle was planning to leave Armenia. The men did not rape her because, according to Sarkisian, she was worth more to them as a virgin, and they let her go.

About two months later, in April 2001, the same men abducted Sarkisian again, and held her for about two and a half hours. The men pushed her around, and they told her that she would have to cooperate. Because her uncle was planning to leave Armenia, she would be alone. Sarkisian agreed to their demands, but convinced the men to release her for the time being. Sarkisian told her uncle about both abductions, asking him to report the incidents to the police. Although the uncle told Sarkisian he reported the

2

incidents, Sarkisian was not aware of any action the police took on her behalf. She believed the police would not act unless they were paid off.

Sarkisian also told a friend about each incident after it happened. After the second incident, the friend gave Sarkisian a passport and bought a ticket for her to fly to the United States. Sarkisian was arrested upon entry and eventually released into the United States, pending a decision in her case. While here, she has married an Armenian man who is a U.S. resident. They have had two children, and Sarkisian testified at her hearing that her husband probably will go with her to Armenia if her application fails. Sarkisian also testified, however, that she fears returning to Armenia. The men who abducted her know who she is. They will find her and traffic her, she believes, even if she relocates within Armenia.

In addition to her own testimony and other evidence presented to the Immigration Judge, Sarkisian called Maria Velikonja, a former FBI agent, to testify as an expert witness on human trafficking. Velikonja has experience training foreign police forces on human trafficking, and in 2004, she had trained Armenian police on human trafficking. She found the Armenian police to be the "least experienced and least knowledgeable on [the] topic" of any police group she had trained (AR 163), and she stated she would not advise a young woman in Armenia to report a trafficking incident to the police. Velikonja's testimony supported several aspects of Sarkisian's story, which she found plausible. Velikonja explained, for example, that young children, young women, and

3

orphans are particularly vulnerable to trafficking. Moreover, virgins are more valuable to traffickers, she said, which explains why the abductors would sexually assault but not rape Sarkisian. Velikonja did not have personal knowledge of married women being trafficked in Armenia. She testified, however, that married women in other countries are trafficked, and she knew of no reason why the situation in Armenia would be different. Velikonja believed Sarkisian and possibly her children would be vulnerable to trafficking if sent back to Armenia.

The Immigration Judge ("IJ") denied Sarkisian's applications for asylum and withholding of removal. He did not believe Sarkisian,[1] and he rejected her application based on the adverse credibility determination. Additionally, as an alternative basis for denying the application, the IJ reached two other conclusions. First, he decided Sarkisian's past persecution was not on account of membership in a particular social group. Accordingly, Sarkisian could not establish past persecution on account of any of the protected grounds listed in 8 U.S.C. § 1101(a)(42)(A). Second, even if Sarkisian had established past persecution on account of a protected ground, a fundamental change in circumstances—her marriage—rebutted the presumption of a well-founded fear of future persecution based on past persecution. *See* 8 C.F.R. § 1208.13(b)(1)(i)(A).

---

[1]Although the IJ's adverse credibility determination is not relevant to this petition, the IJ found Sarkisian not credible based on changes in her story and a failure to supply evidence the IJ believed she could have easily provided.

The Board of Immigration Appeals ("BIA" or "Board") adopted and affirmed the IJ's opinion except for the adverse credibility determination. It accepted Sarkisian's story as true, and it supplemented the IJ's other reasons for denying Sarkisian's application. Even if Sarkisian had established that she was persecuted on account of membership in a particular social group, Sarkisian's marriage constituted a fundamental change in her circumstances under 8 C.F.R. § 1208.13(b)(1)(i)(A). This change, the Board reasoned, would eliminate any well-founded fear of persecution arising from past persecution. The BIA also concluded the record did not contain sufficient evidence to show Sarkisian would have a well-founded fear as a member of the different particular social group consisting of "young, Armenian women who were previously targeted for trafficking." (AR 3.)

I

Under 8 U.S.C. § 1252, we have jurisdiction to review final orders of removal. The final order is normally the order of the BIA. *Voci v. Gonzales*, 409 F.3d 607, 612 (3d Cir. 2005); *Miah v. Ashcroft*, 346 F.3d 434, 439 (3d Cir. 2003); *Abdulai v. Ashcroft*, 239 F.3d 542, 548 (3d Cir. 2001). However, we depart from this general rule and consider both the BIA's decision and the IJ's decision to the extent the BIA expressly adopts or defers to the IJ's decision. *Kibinda v. Att'y Gen.*, 477 F.3d 113, 118–19 (3d Cir. 2007); *Cham v. Att'y Gen.*, 445 F.3d 683, 690 (3d Cir. 2006); *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002) (*citing Abdulai*, 239 F.3d at 549 n.2). Here, the BIA expressly adopted and

5

affirmed the decision of the IJ "with the exception of the adverse credibility finding." The BIA assumed Sarkisian's testimony was true—which we also assume, *see Kayembe v. Ashcroft*, 334 F.3d 231, 234–35 & n.1 (3d Cir. 2003). Because the BIA adopted the IJ's decision in all other respects, the agency's final order consists of the BIA's decision and those parts of the IJ's decision that are unrelated to the adverse credibility determination.

Additionally, our review is limited. We may review only those facts contained in the administrative record. 8 U.S.C. § 1252(b)(4)(A). And we only consider those claims for which the petitioner has raised and exhausted all administrative remedies. 8 U.S.C. § 1252(d)(1); *Kibinda v. Att'y Gen.*, 477 F.3d at 120–21 n.8; *Abdulrahman v. Ashcroft*, 330 F.3d 587, 594–95 (3d Cir. 2003) (holding administrative remedies were not exhausted for claims not raised before the BIA).[2]

---

[2]Sarkisian seeks to supplement the record by introducing new evidence: a report of an Armenian non-governmental organization and the fact that Sarkisian's husband may not go with her to Armenia, even though she believed at her hearing that he will (AR 209). Sarkisian also makes a new argument—that she should be granted asylum for humanitarian reasons—and she renews an argument presented before the IJ, but not the BIA, that she is entitled to relief under the Convention Against Torture. We cannot consider either the new facts or the new argument because they were not properly presented to the agency. 8 U.S.C. § 1252(b)(4)(A), (d)(1). The Convention Against Torture claim is not properly before us because Sarkisian did not "meaningfully" present the claim to the BIA. (AR 2); *Abdulrahman*, 330 F.3d at 594–95.

II

Under the Immigration and Nationality Act, the attorney general has the

discretionary authority to grant asylum to an alien who shows she is a refugee.  8 U.S.C. §

1158(b).  A refugee is any person who is

> outside [the] country of such person's nationality . . . and who is unable or
> unwilling to return to, and is unable or unwilling to avail himself or herself
> of the protection of, that country because of persecution or a well-founded
> fear of persecution on account of race, religion, nationality, membership in
> a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).  The burden of proof is on the applicant to establish that she is

a refugee, 8 C.F.R. § 208.13(a), and the touchstone of refugee status is a well-founded

fear of persecution in the applicant's country of nationality.  The applicant can establish

this well-founded fear in two ways.  First, she can show she was subjected to past

persecution, which gives rise to a presumption that the applicant has a well-founded fear

of persecution.  *Id.* § 208.13(b).  Second, and independent of any past persecution, the

applicant can show she has a well-founded fear of future persecution.  *Id.* § 208.13(b),

(b)(1), (b)(2).

Whether the applicant seeks to show past persecution or a well-founded fear of

future persecution, the applicant must also establish that the persecution is "on account

of" one of the five protected grounds listed in 8 U.S.C. § 1101(a)(42)(A)—race, religion,

nationality, membership in a particular social group, or political opinion.  Sarkisian

claims her persecution is on account of membership in a particular social group.  We have

7

adopted the BIA's definition that a particular social group must be based on a "common, immutable characteristic":

> The shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past experience such as former military leadership or land ownership. . . . [W]hatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.

*Fatin v. INS*, 12 F.3d 1233, 1239–40 (3d Cir. 1993) (*quoting In re Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)). To show persecution on account of membership in a particular social group, an applicant must establish three elements: (1) "a group that constitutes a 'particular social group' within the interpretation just discussed," (2) membership in that group, and (3) persecution based on that membership. *Id.* at 1240. Regarding this third factor, "the statute makes motive critical," and the applicant "must provide *some* evidence of it, direct or circumstantial." *INS v. Eliaz-Zacarias*, 502 U.S. 478, 483 (1992).[3] The three elements, including the showing of motive, are required to prove both past persecution and a well-founded fear of future persecution on account of a particular social group.[4]

---

[3]The REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., 119 Stat. 302, 303, added the requirement that a protected ground must be "at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B). However, because Sarkisian's application for asylum was filed prior to May 11, 2005, the effective date of the REAL ID Act of 2005, that provision does not apply to her case. *See* 8 U.S.C. § 1158 note.

[4]Whether an applicant was or will be persecuted on account of membership in a

(continued...)

A

Regarding past persecution, the agency concluded Sarkisian had not been persecuted on account of membership in a particular social group. Although the BIA did not address this issue, the IJ concluded Sarkisian was not a member of a particular social group. Because the BIA expressly adopted the IJ's decision, that portion of the IJ's determination is part of the agency's final order. *See Kibinda*, 477 F.3d at 118–19; *Cham*, 445 F.3d at 690; *Gao*, 299 F.3d at 271 (*citing Abdulai*, 239 F.3d at 549 n.2).

Sarkisian contests this finding in the heading introducing the argument section of her brief[5] and in a single sentence in the argument: "Armine contends that the incidents were inflicted against her as a member of a particular social group, i.e., a female virgin and orphan in Armenia who was actually trafficked in Armenia, during her abductions, and targeted for a life of prostitution . . . ." (Br. of Petitioner at 21.)[6] But the experience

---

[4](...continued)
particular social group, as defined by the statute, is a question of law, subject to de novo review. *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 339 (3d Cir. 2008) (*citing Escobar v. Gonzales*, 417 F.3d 363, 365 (3d Cir. 2005)).

[5]The heading states the "legal finding that Armine is not a member of a particular social group" is incorrect. (Br. of Petitioner at 20.)

[6]The only other passage in Sarkisian's brief addressing membership in a particular social group is on pages 26–28. This passage assumes Sarkisian prevails on the issue of past persecution. (*See* Br. of Petitioner at 26 (noting "Armine has already suffered past persecution based on membership in a particular social group"); *id.* at 28 (assuming Sarkisian "was persecuted upon two instances due to membership in a particular social group").) It also distinguishes a Sixth Circuit case by pointing out that Sarkisian had already been subjected to persecution. (Br. of Petitioner at 27.) But past persecution
(continued...)

9

of past persecution cannot define a particular social group motivating the past persecution. *Lukwago v. Ashcroft*, 329 F.3d 157, 172 (3d Cir. 2003). This is a matter of logic: motivation must precede action; and the social group must exist prior to the persecution if membership in the group is to motivate the persecution. Here, Sarkisian uses the past persecution—the trafficking and abductions—to define the social group that she claims was the motivation for her past persecution. This does not suffice.

Accordingly, Sarkisian has not shown the past persecution was motivated by one of the protected grounds, and she is not entitled to a presumption of a well-founded fear of persecution under 8 C.F.R. § 208.13.[7]

---

[6](...continued)
cannot define the social group that motivated that very persecution. *Lukwago v. Ashcroft*, 329 F.3d 157, 172 (3d Cir. 2003). Accordingly, we construe this passage as an argument about future persecution.

[7]Because Sarkisian was not entitled to this presumption, we will not consider whether the government met its burden to show fundamentally changed circumstances under 8 C.F.R. § 208.13(b)(1)(i)(A). We do, however, express concern about the BIA's use of administrative notice. The Board looked to an International Organization of Migration Report ("IOM Report"), and took notice of the proposition that "*none* of the trafficked women in the study were married." (AR 3 (*citing* International Organization of Migration, *Trafficking in Women and Children from the Republic of Armenia: A Study* (2001), at 20).) Because Sarkisian was married, the Board would have us believe, her circumstances were fundamentally changed such that she would not have a well-founded fear of future trafficking. The BIA failed to note, however, that nearly 90 percent of the trafficked women in the study had been married: more than 72 percent of the women were divorced; 14 percent were widowed; and 2.3 percent were separated, which is particularly problematic because in many jurisdictions persons who are separated are still considered married. IOM Report at 20–21. Accordingly, the evidence was incorrect, misleading, or at least incomplete because its probative value depends on unsupported assumptions about the likelihood of death, divorce, or separation. Additionally, the BIA did not note

(continued...)

B

Because Sarkisian's arguments about past persecution are insufficient, we also consider whether she can show an independent well-founded fear of future persecution. Sarkisian contends she is a young Armenian woman who was targeted in the past, her abductors are organized, they know who she is, and they will target her again if she returns to Armenia. As with past persecution, the applicant must identify a particular social group of which she is a member and demonstrate that future persecution would be motivated by membership in that group. *See Lukwago*, 329 F.3d at 174; *Fatin*, 12 F.3d at 1235–36, 1238–42.

A particular social group must exist independent of the persecution suffered by the applicant. *Lukwago*, 329 F.3d at 172. As noted, for past persecution, this is a matter of logic: the particular social group must pre-exist the persecution to be a motivating factor. Regarding a fear of future persecution, past persecution may be relevant. *Id.* at 172, 178. As the BIA has recognized, "a shared past experience may be enough to link members of a 'particular social group.'" *Id.* at 178 (*quoting Acosta*, 19 I. & N. Dec. at 233). And that

---

[7](...continued)
an important ambiguity in the IOM survey. The survey asked for marital status, but it is not clear whether the questions asked respondents about their marital status at the time they were trafficked or at the time of the survey. IOM Report at 46.

Generally, the BIA may take administrative notice, 8 C.F.R. § 1003.1(d)(3)(iv); the IOM Report may be relevant to Sarkisian's circumstances; and because Sarkisian's past persecution claim is insufficient for other reasons, any error on this point is harmless. The facts noticed here, however, are a kind for which adversarial testing would have been particularly helpful and administrative notice particularly ill suited.

11

experience may become part of a person's character, fundamental to her conscience or identity. *See id.* In *Lukwago* we found the petitioner had established a well-founded fear of future persecution because of membership in the group of "children from Northern Uganda who have escaped from involuntary servitude after being abducted and enslaved" by the Lord's Resistance Army. *Id.* at 174. And in *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 345–48 (3d Cir. 2008), the petitioner established a well-founded fear based on escape from the Fuerzas Armadas Revolucionarias de Columbia ("FARC").

In both cases, the petitioners presented not only evidence that previously persecuted members of their group were subject to repeat persecution but also evidence of a motivating factor. Lukwago presented evidence that the Lord's Resistance Army exacted retribution for escape, killing escaped children to punish them or to make an example of them. *Lukwago*, 329 F.3d at 179–80. Likewise, Gomez-Zuluaga established that the FARC killed escaped members of her family and others who had escaped. *Gomez-Zuluaga*, 527 F.3d at 347. These FARC killings were retribution for escape. *Id.* The fact of past persecution in these cases was relevant not merely because the applicants were persecuted, their persecutors knew who they were, or their persecutors might persecute them again. Rather, these applicants presented evidence showing their persecutors would retaliate because of their escape, an experience shared with other escapees, or at least that the escape was one central reason for persecution.

In this case, Sarkisian seeks to define the particular social group in terms of her past persecution—young Armenian women who were targeted in the past. She claims she was persecuted before, her persecutors will recognize her, and that she is likely to be targeted again. But unlike the applicants in *Lukwago* and *Gomez-Zuluaga*, Sarkisian does not explain how her past persecution will motivate her abductors to target her. Without the emphasis on her past persecution, Sarkisian's argument is that her youth and gender put her at risk for future abduction. But as we have noted, "[p]ossession of broadly-based characteristics such as youth and gender will not by itself endow individuals with membership in a particular group." *Lukwago*, 329 F.3d at 172 (*quoting Gomez v. INS*, 947 F.3d 660, 664 (2d Cir. 1991)); *see also Escobar v. Gonzales*, 417 F.3d 363, 367–68 (3d Cir. 2005) (concluding poverty, homelessness, and youth, though "appealing to sympathy and compassion," are "far too vague and all encompassing to be characteristics that set the perimeters for a protected group").

Because Sarkisian has not shown past persecution or fear of future persecution on account of a protected ground, the agency's denial of Sarkisian's asylum application was not improper.

## III

In addition to asylum, Sarkisian seeks witholding of removal. She must establish that it is more likely than not that she will face persecution on account of a protected ground if returned to her country of origin. 8 C.F.R. § 208.16(b); *Gomez-Zuluaga*, 527

13

F.3d at 348; *Lukwago*, 329 F.3d at 182.  Because Sarkisian has not established that her persecution is on account of a protected ground, the analysis of her asylum claim disposes of her withholding of removal claim.  The agency's denial of her application for withholding of removal was accordingly not improper.

## IV

For the foregoing reasons, we will deny Sarkisian's petition for review.