3 F.3d 613
 Lulseged DHINE, Petitioner-Appellee-Cross-Appellant,
v.
William SLATTERY, District Director, New York District,
Immigration & Naturalization Service,
Respondent-Appellant-Cross-Appellee.
 Nos. 1986, 2055, Dockets 93-2326, 93-2352.
 United States Court of Appeals,
Second Circuit.
 Argued July 16, 1993.
Decided Aug. 26, 1993.
 
 Douglas W. Baruch, Washington, DC (Milton Eisenberg, Jordan S. Fried, Fried, Frank, Harris, Shriver & Jacobson, Washington DC, of counsel), for petitioner-appellee-cross-appellant.
 Diogenes P. Kekatos, New York City (Mary Jo White, U.S. Atty., S.D.N.Y., James A. O'Brien, III, Sp. Asst. U.S. Atty., Gabriel W. Gorenstein, Asst. U.S. Atty., of counsel), for respondent-appellant-cross-appellee.
 Before: MAHONEY, McLAUGHLIN and JACOBS, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 Following the denial of his application for asylum status, Lulseged Dhine successfully petitioned the United States District Court for the Southern District of New York (Haight, J.) for a writ of habeas corpus ordering the Immigration and Naturalization Service ("INS") to grant Dhine political asylum. 818 F.Supp. 671 (1993). The INS appeals from the grant of the petition. Dhine cross-appeals the district court's ruling that, because Dhine had never "entered" the country as that term is defined under the immigration laws, he was not entitled to the procedural advantages of a deportation hearing and his status was therefore properly determined by the INS in an exclusion hearing. We conclude, as did the district court, that Dhine is subject to exclusion rather than deportation; however, because the district court erred in holding that the INS abused its discretion in denying asylum, we reverse the order of the district court.FACTS
 
 
 2
 Dhine is an Ethiopian national and citizen who came to this country in 1978. At that time, Dhine was admitted as a "conditional refugee" pursuant to section 207(a)(7) of the Immigration and Nationality Act of 1952 as amended, 8 U.S.C. Sec. 1153(a)(7) (1976), which then provided for the conditional entry of aliens who could demonstrate that they had escaped from a communist-controlled country and were unwilling to return because they feared persecution on the basis of one or more enumerated factors, including religion. Dhine, who is Jewish, had fled the communist dictatorship of Mengistu Haile Mariam and feared returning to Ethiopia because that regime persecuted members of the Jewish community.
 
 
 3
 Since coming to this country at age 16, Dhine has been convicted of seven crimes, most of them drug related. On November 22, 1982, he was convicted for possession of marijuana, and sentenced to six months probation. During that probation period, on April 27, 1983, he entered a plea of guilty to receiving stolen property, and was sentenced to time served. On February 26, 1988, he entered a plea of guilty to attempted distribution of marijuana, and was sentenced to 180 days imprisonment (120 days of which were suspended) and one year of probation. Probation was revoked on July 14, 1988, and he was sentenced to 120 days imprisonment. On November 3, 1988, Dhine entered a plea of guilty to attempted possession of cocaine, and was sentenced to 90 days imprisonment. On the same day, he entered a plea of guilty for failure to appear, and was sentenced to 180 days imprisonment. On January 12, 1989, he was again charged with a failure to appear; on conviction for that offense, he was sentenced to 180 days imprisonment. On March 6, 1990, Dhine entered a plea of guilty to possession of cocaine, and was sentenced to a year's imprisonment. All or most of these proceedings were conducted in the District of Columbia.
 
 
 4
 In September 1990, while Dhine was apparently still serving the sentence for his most recent conviction, the INS took Dhine into custody and charged him as being excludable under 8 U.S.C. Sec. 1182(a)(23) (1988). Dhine received a hearing in front of an Immigration Judge of the INS. At that hearing, Dhine conceded his excludability, but sought asylum based on his claimed fear of persecution by the Mengistu regime, and applied for "withholding of deportation or return" under 8 U.S.C. Sec. 1253(h)(1) (1988), which bars the INS from repatriating an alien if the INS determines that the alien's life or freedom would be threatened there on account of race, religion, nationality, membership in a particular social group, or political opinion. The INS contended that Dhine was not entitled to asylum, and that Dhine was subject to the exception under 8 U.S.C. Sec. 1253(h)(2) for aliens who are convicted of an "aggravated felony" or a "particularly serious crime."
 
 
 5
 Dhine testified that, before he fled Ethiopia, he learned from neighbors that government officials killed his father, mother and brother because his father had refused to turn over his land and religious articles and to accept in return a book of sayings attributed to the late Chinese dictator Mao Tse-tung. Dhine testified that he then tried to escape the country, but was captured, beaten and jailed by the authorities. Dhine later made good his escape, by way of Sudan, Djibouti and France, and arrived in the United States under the sponsorship of a charitable organization.
 
 
 6
 In an oral decision rendered after the hearings, Immigration Judge Alan L. Page found that Dhine had a well-founded fear of persecution and was therefore eligible for asylum. The Immigration Judge nonetheless exercised discretion to deny Dhine's application chiefly on the ground of Dhine's criminal record:
 
 
 7
 Although I am satisfied that he has met this burden [as to a fear of persecution], as a matter of discretion I do not believe that he is entitled to [asylum]. He has no family in this country. His history of employment is totally uncorroborated. No tax returns were submitted. But most importantly, his criminal history is very severe and is a very adverse factor in this proceeding. As a matter of discretion, I will not grant him asylum.
 
 
 8
 The Immigration Judge also held that the INS need not withhold deportation or return to Ethiopia, regardless of any peril he may face there, because Dhine's convictions were for "serious crimes", a determination that renders unavailable the protection of 8 U.S.C. Sec. 1253(h)(1).
 
 
 9
 The Board of Immigration Appeals ("BIA") affirmed the Immigration Judge's decision on September 26, 1991, but remanded the case to the Immigration Judge for a finding as to whether Dhine's fear of persecution continued to be well founded in light of intervening events in Ethiopia, including the fall of the Mengistu regime, the airlift of thousands of Ethiopian Jews to Israel, and the installation of a new governing coalition that had promulgated a charter endorsing basic human rights. The BIA also held that Dhine was not eligible for protection under 8 U.S.C. Sec. 1253(h)(1) because he had been convicted of an "aggravated felony" within the meaning of Sec. 1253(h)(2). The BIA did not, however, decide whether Dhine's convictions were for "serious crimes," a finding that also would have defeated Dhine's efforts to avoid his return to Ethiopia.
 
 
 10
 On remand before the Immigration Judge, Dhine testified that the new regime in Ethiopia was "very dangerous to the Jewish community," and that if he returned to Ethiopia he would be imprisoned for practicing his religion and "could be murdered." On October 23, 1991, the Immigration Judge issued a further opinion, which considered the change of regime in Ethiopia, the array of issues bearing upon the exercise of discretion, and new submissions and arguments by Dhine concerning the efforts he had made while in INS custody since September 1990 to overcome his drug problem and otherwise reform himself. The Immigration Judge exercised discretion to deny asylum chiefly in light of Dhine's criminal history, notwithstanding potential risks facing Dhine in Ethiopia.
 
 
 11
 On the appeal following remand, the BIA affirmed but did so principally on different grounds. In its March 17, 1992 decision, the BIA held that the change of regime in Ethiopia required Dhine to make a new showing that he would face persecution if he were returned, but that Dhine "offered no documentary or testimonial evidence that the present government of Ethiopia has persecuted Jews." In addition, relying on a State Department publication, the BIA noted that the government of Ethiopia now espoused freedom of religion and was currently allowing free passage to Israel for Jews wishing to leave Ethiopia. In light of this evidence, the BIA ruled that, discretionary considerations aside, Dhine had failed to show that he was eligible for asylum. In the alternative, the BIA decided that it "would not grant asylum in the exercise of discretion even if [Dhine] established a well-founded fear of persecution."
 
 
 12
 The BIA also considered whether Dhine was entitled to withholding of deportation or return, under 8 U.S.C. Sec. 1253(h)(1). By reason of statutory changes, the BIA's previous designation of Dhine as an aggravated felon was no longer tenable; however, the BIA recited that it did not have to consider further the impact of 8 U.S.C. Sec. 1253(h)(1) because in any event Dhine had failed to demonstrate a well-founded fear of persecution under the new Ethiopian regime.
 
 
 13
 The petition for a writ of habeas corpus was filed on March 20, 1992. Dhine argued to the district court that he was eligible for asylum; that the BIA erred in holding otherwise; that the BIA had wrongly placed upon Dhine the burden of showing continued persecution of Jews under the new Ethiopian government; and that it was an abuse of discretion for the Attorney General to deny asylum. Dhine also contended that, in any event, he was entitled to have his application for asylum evaluated in a deportation proceeding, which is procedurally more advantageous to the alien than an exclusion proceeding. The district court held that the INS had properly conducted its proceeding as one for exclusion (rather than deportation), but granted Dhine's petition nevertheless. The district court reasoned that the BIA erred in placing on Dhine the burden of proof as to his risk of religious persecution in post-Mengistu Ethiopia, that the BIA therefore erroneously relied upon changed circumstances to decide that Dhine was no longer a refugee from religious persecution, and that denial of asylum solely on the basis of several misdemeanor convictions is an abuse of discretion. Accordingly, the district court ordered the INS to grant Dhine asylum and release him from custody. This appeal and cross-appeal followed.
 
 
 14
 We agree with the district court that Dhine's immigration status is the appropriate subject of an exclusion hearing, but we reverse the district court's grant of the writ because we conclude that the BIA did not abuse its broad discretion in denying Dhine's application for asylum.
 
 DISCUSSION
 
 15
 Since we are in the same position as the district court to evaluate the evidentiary findings and legal conclusions of the BIA, our review of the district court's grant of habeas corpus is conducted de novo. See Anderson v. McElroy, 953 F.2d 803, 805 (2d Cir.1992).
 
 Exclusion or deportation
 
 16
 Dhine's cross-appeal raises the issue of whether his status should have been resolved in a deportation hearing rather than in an exclusion hearing. The INS originally commenced deportation proceedings against Dhine in 1988. Those proceedings were terminated in September 1990, when the INS commenced exclusion proceedings pursuant to 8 U.S.C. Sec. 1182(a)(23), which renders aliens who have been convicted of narcotics related offenses ineligible for admission to the United States. The difference between deportation and exclusion is significant because a person who is deemed to have already "entered" the country can no longer be "excluded" and is subject to a deportation proceeding in which he or she enjoys greater rights than one who has not entered the country. See Sale v. Haitian Centers Council, Inc., --- U.S. ----, ---- - ----, 113 S.Ct. 2549, 2560-61, 125 L.Ed.2d 128 (1993). As we have stated previously, "[d]eportation proceedings are generally more favorable to the alien than exclusion proceedings. Rights available in deportation but not exclusion include advance notice of the charges, a burden of proof placed on the government, direct appeal to the Court of Appeals, the right to seek suspension of the order, and the right to designate the country of destination." Correa v. Thornburgh, 901 F.2d 1166, 1171 n. 5 (2d Cir.1990).
 
 
 17
 Dhine contends that he has "entered" the country and therefore cannot be "excluded" from the United States. "An entry involves ... an inspection and admission by an immigration officer or ... actual and intentional evasion of inspection at the nearest inspection point." Correa, 901 F.2d at 1171 (internal quotations and citation omitted). Dhine concedes that his crossing of the border as a conditional entrant under 8 U.S.C. Sec. 1153(a)(7) (1976) did not constitute an entry, but he advances two theories in support of his claim that, during the course of his long presence within the borders of the United States, he "entered" the country, or should be deemed to have done so.
 
 
 18
 Both of Dhine's arguments are based on 8 U.S.C. Sec. 1153(g) as it applied to him in 1978. Under that subsection, [a]ny alien who conditionally entered the United States as a refugee, pursuant to Subsection (a)(7) of this section, whose conditional entry has not been terminated by the Attorney General ..., who has been in the United States for at least two years, and who has not acquired permanent residence shall forthwith return or be returned to the custody of the Immigration and Naturalization Service and shall thereupon be inspected and examined for admission into the United States.
 
 
 19
 Dhine never presented himself to the INS for such an inspection, nor did the INS take him into custody for that purpose. Dhine's first contention is that his failure to appear after two years is the functional equivalent of his having evaded inspection at a border, and that he thereby "entered" the country when the conditional character of his entry lapsed after two years. We see nothing in the statute which suggests that Dhine's failure to appear for inspection two years after his arrival confers upon him advantages he might, but would not necessarily, have achieved if he had actually appeared.
 
 
 20
 Dhine's second argument is that the INS is estopped from asserting that he never entered the country, because he went to INS offices five times for various purposes including visa renewal (once within two years of his arrival, and four times thereafter), and the INS did not conduct an inspection. According to Dhine, the INS's failure to conduct the required inspection impliedly and wrongfully assured Dhine that his immigration status was in order. We have recognized that in truly extraordinary cases the government may be estopped in immigration cases. In Corniel-Rodriguez v. INS, 532 F.2d 301, 306-07 (2d Cir.1976), we held that the INS was estopped from deporting the petitioner because the INS had failed to give a warning that it was required to give by its own regulations. As we noted in Scime v. Bowen, 822 F.2d 7 (2d Cir.1987), our opinion in Goldberg v. Weinberger, 546 F.2d 477 (2d Cir.1976), cert. denied, 431 U.S. 937, 97 S.Ct. 2648, 53 L.Ed.2d 255 (1977), confined the holding of Corniel-Rodriguez to its facts, "particularly the immigration official's failure to provide petitioner with a warning mandated by federal regulation." 822 F.2d at 9. The circumstances cited by Dhine do not begin to justify estoppel against the government. See INS v. Miranda, 459 U.S. 14, 18-19, 103 S.Ct. 281, 283-284, 74 L.Ed.2d 12 (1982) (unexplained delay in processing does not give rise to estoppel). He does not claim that the INS failed to give a legally mandated notification.
 
 Dhine's claim for asylum
 
 21
 In order to qualify for asylum, Dhine must meet two requirements. First, Dhine must satisfy the statutory test for eligibility by showing that he is a "refugee": a person who is unable or unwilling to return to his native country because of past "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Secs. 1101(a)(42), 1158(a). Second, Dhine must persuade the Attorney General (through the INS bureaucracy) to exercise discretion to grant him asylum. Id. Sec. 1158(a). The BIA held that Dhine failed to prove that he was eligible for asylum and that, even if he were, the Attorney General should not exercise discretion to grant asylum. The district court reversed on the grounds (a) that Dhine had met his burden of proving his refugee status and (b) that, because Dhine was a refugee, it was an abuse of discretion for the Attorney General to deny him asylum on the basis of his criminal record.
 
 
 22
 On appeal, the INS does not challenge the district court's first conclusion, i.e., that Dhine was a refugee. The INS argues instead that the BIA acted within its discretion in denying Dhine's application for asylum because the change of regime in Ethiopia eroded the ground on which Dhine's fear of persecution was founded and because he had a record of drug related convictions. Dhine protests that the government has not appealed the district court's determination that Dhine is a refugee, and that its failure to do so means that the government cannot now challenge the district court's conclusion that Dhine faces persecution. Since fear of persecution is a consideration that the Attorney General may consider in exercising discretion, and since the district court's ruling with respect to that exercise of discretion is the subject of the government's appeal, fear of persecution is an issue preserved for appeal. We may therefore consider whether the district court erred in disregarding the BIA determination that Dhine's claimed fear of persecution was not well founded.
 
 
 23
 It is undisputed that Dhine had a well founded fear of persecution at the time he fled Ethiopia. The parties vigorously dispute whether the overthrow of the Mengistu government constitutes a changed circumstance that required Dhine to establish a new foundation on a current basis for his expressed fear of persecution. The BIA took administrative notice of the overthrow of Mengistu and the installation of a government that endorsed freedom of religion and guaranteed it in the national charter. The BIA held that these facts, together with facts reported in a paragraph in a State Department report on the current status of the Jewish community in Ethiopia, constituted changed circumstances that renders Dhine's fear of persecution ill-founded. Dhine challenged that ruling in his petition, and the district court reversed the BIA. The district court acknowledged that Mengistu had fallen, that the successor "transitional government's charter contained provisions promising freedom of religion," and that the BIA could take administrative notice of these events. 818 F.Supp. at 677. The district court held, however, that these facts were insufficient to establish changed conditions, that the INS bore that burden, and that (as an evidentiary matter) the State Department report received in evidence concerning the status of Jews in post-Mengistu Ethiopia contained facts insufficiently well known and agreed upon to justify the BIA's administrative notice. Id. 677-78. We agree that the burden lies in the first instance on the INS. Whether or not the BIA properly relied upon the State Department report, it is undisputed that the fall of Mengistu resulted in a new regime rather than an orderly substitution of ministers or parties in a continuing government. Such a change in conditions is sufficient, in the absence of any countervailing showing by Dhine, to support a finding on a preponderance of evidence test that conditions in Ethiopia have so changed that Dhine no longer has a well-founded fear of being persecuted if he were to return. Cf. Kapcia v. INS, 944 F.2d 702, 709 (10th Cir.1991). If we were to adopt the district court's position--that the State Department report was inadmissible--we would have to remand the case to the BIA or the Immigration Judge to decide whether to exclude Dhine based on a record omitting the State Department report.
 
 
 24
 We need not determine, however, whether the district court's rejection of the State Department report was sound, nor need we remand for the Immigration Judge to address that issue, because the Attorney General has statutory discretion to deny Dhine asylum even if his expressed fear of persecution is well founded, and because the BIA has plainly stated "that we would not grant asylum in the exercise of discretion even if the applicant established a well-founded fear of persecution."
 
 
 25
 The district court concluded that, in light of the totality of the circumstances (including Dhine's well-founded fear of persecution), the BIA's denial of Dhine's application for asylum was an abuse of discretion. Specifically, the district court questioned the administrative conclusion that Dhine's drug history overwhelms certain "positive factors": Dhine's accomplishments as a linguist, his religious faith, his exemplary conduct while in INS custody, and offers of employment and other assistance upon his release from custody. We reverse because, even if Dhine established a well-founded fear of persecution, it would be within the Attorney General's discretion to rely on his criminal record in order to deny his application for asylum.
 
 
 26
 The "INS is the agency primarily charged by Congress to implement the public policy underlying these laws ... Appropriate deference must be accorded its decisions." INS v. Miranda, 459 U.S. 14, 19, 103 S.Ct. 281, 284, 74 L.Ed.2d 12 (1982). The Supreme Court has cautioned against "improvidently encroach[ing] on the authority which the [Immigration and Nationality] Act confers on the Attorney General and his delegates." INS v. Jong Ha Wang, 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam). Thus, we are obliged to uphold the INS's decision unless it is an abuse of discretion. See Saleh v. United States Dep't of Justice, 962 F.2d 234, 238 (2d Cir.1992). We need only decide whether or not the INS considered the appropriate factors and came to a decision that has any rational basis. See Vergara-Molina v. INS, 956 F.2d 682, 684-85 (7th Cir.1992).
 
 
 27
 Seven convictions over seven years--even seven misdemeanors--easily furnish a rational basis for the Attorney General's exercise of discretion. The Attorney General is not obliged to shelter people from despotic persecution abroad so that they may enjoy lawful imprisonment in the United States. Other courts have recognized that drug-related convictions are grounds for denial of asylum. E.g. Mahini v. INS, 779 F.2d 1419, 1420-21 (9th Cir.1986) (upholding INS decision to deport alien to Iran because of drug-related conviction despite fear of persecution).
 
 
 28
 Dhine points to a number of factors that he contends the INS failed to consider in evaluating his application for asylum, such as his record as a model prisoner while detained by the INS, including his volunteer service as a translator, his contributions to charity, and his abstention from drugs. However, the BIA's decision explicitly considers these factors, and others advanced by Dhine, and finds that they do not outweigh the criminal convictions. That exercise of discretion cannot be deemed irrational.
 
 CONCLUSION
 
 29
 We have examined all other arguments advanced by Dhine on this appeal and find them lacking in merit. Accordingly, we reverse the district court's decision to the extent that it ordered the INS to grant Dhine asylum and to release him from custody.