**Batsaihan PURVEEGIIN, Petitioner,**

v.

**UNITED STATES I.N.S. PROCESSING CENTER, Respondent.**

**No. 98 Civ. 7934(SAS).**

United States District Court,
S.D. New York.

Oct. 8, 1999.

Batsaihan Purveegiin, York, PA, pro se.

Aaron M. Katz, Assistant United States Attorney, New York, NY, for Respondent.

## OPINION & ORDER

SCHEINDLIN, District Judge.

Petitioner Batsaihan Purveegiin ("Purveegiin" or "Petitioner"), proceeding pro se, brings this application for a writ of habeas corpus, 28 U.S.C. § 2241, seeking review of an order denying his application for asylum and withholding of removal (hereinafter "deportation").[1] Petitioner alleges that he will face persecution if he is returned to his native country, Mongolia. Respondent United States INS Processing Center ("INS" or "Government") argues, inter alia, that the Court lacks subject matter jurisdiction to review the petition. For the reasons stated below, the petition is DENIED.

## I. Background

Purveegiin, a native and citizen of Mongolia, entered the United States in 1991 as a nonimmigrant exchange student to study painting at The Art Students League in New York City. *See* Purveegiin's Brief to the Board of Immigration Appeals ("BIA") dated March 26, 1998, attached to Purveegiin's Petition for a Writ of Habeas Corpus ("Pet.Brief"), at 1.

In order to pay for his studies, petitioner borrowed approximately $22,000 from the Mongolian Government. Pet. Brief at 1. Petitioner was expected to repay the loan while attending school. Pet. Brief at 1. Once in the United States, petitioner found he was unable to pay the loan. Pet. Brief at 2. The Mongolian Government denied his request for a deferment and threatened Purveegiin with immediate arrest upon his return "for stealing the mon-

ey of the Mongolian people." Pet. Brief at 2, 5; *see also* Return, record of Purveegiin's INS proceedings certified by the Executive Office for Immigration Review of the United States Department of Justice, attached to declaration of Assistant United States Attorney Aaron M. Katz dated May 27, 1999 ("R."), at 248–50. In April 1992, Purveegiin dropped out of The Art Students League and did not continue his studies at any other school. Pet. Brief at 2; R. at 222. From 1993–1997, Purveegiin was homeless; during this time, Purveegiin was convicted of several crimes. Pet. Brief at 2; R. at 387, 460–71.

While in the United States, Purveegiin met with members of the Mongolian delegation to the United Nations where he denounced the Mongolian People's Revolutionary Party ("MPRP") and vowed to fight against the MPRP while in the United States. Pet. Brief at 2. Purveegiin maintains he will face persecution if he is returned to Mongolia based on the political opinions and criticisms he expressed to MPRP members. Pet. Brief at 6. Purveegiin fears persecution because the MPRP has regained control of the Mongolian government and its members now occupy high positions within the Mongolian government. Pet. Brief at 8.

Purveegiin further maintains that he will be arrested not for defaulting on the loan, but for expressing his political opinion against the MPRP. R. at 270–71. Purveegiin claims he will be "at risk from starvation within the Mongolian prison system." Pet. Brief at 6. He argues that he has established his fear of persecution is well-founded because: (i) he holds a political opinion, (ii) the MPRP is aware of his political opinion, (iii) the MPRP now has the means to carry out the persecution. Pet. Brief at 6, 8–10.

### A. Purveegiin's Criminal History

On March 26, 1993, Purveegiin was convicted and sentenced to three years proba-

---

**1.** The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, codified at 8 U.S.C. § 1252, merged the terms deportation and exclusion into a broader category entitled removal.

tion after pleading guilty to second-degree menacing in violation of N.Y. Penal Law § 120.14(1). Government's Memorandum of Law in Opposition to Pet. ("Gov't Memo"), at 3; R. at 460. On August 18, 1995, Purveegiin was conditionally discharged and sentenced to one day of community service after pleading guilty to petit larceny. Gov't Memo at 4; R. at 461. On November 17, 1995, Purveegiin was resentenced on the menacing conviction to four months incarceration for violating probation. Gov't Memo at 4; R. at 460–61. He was also sentenced to 60 days after pleading guilty to third-degree attempted assault in violation of N.Y. Penal Law §§ 110.00 & 120.00(1). Gov't Memo at 4; R. at 461. On April 14, 1997, Purveegiin was convicted of second-degree criminal impersonation in violation of N.Y. Penal Law § 190.25(1) and sentenced to seven months incarceration after pleading guilty. Gov't Memo at 4; R. at 465. He was also convicted of third-degree sexual abuse in violation of N.Y. Penal Law § 130.55 and sentenced to three months incarceration after pleading guilty. Gov't Memo at 4; R. at 467, see also R. at 157, 272–74

### B. INS Proceedings

In 1997, the INS issued a Notice to Appear charging Purveegiin as deportable because (a) he failed to maintain the conditions of his student status, 8 U.S.C. § 1227(a)(1)(C)(i) (Supp. II 1996), R. at 507–09, and (b) he was convicted of crimes involving moral turpitude. 8 U.S.C. § 1227(a)(2)(A)(i) & (ii) (Supp. II 1996). R. at 397, 460–71. Petitioner conceded his deportability, see R. at 186–87, and applied for asylum and withholding of deportation on the ground that he would face persecution based on his political beliefs. Pet. Brief at 2; R. at 188, 383–89. See also Section II(B), infra.

On November 14, 1997, Purveegiin (represented by counsel, see R. at 200) testified before Immigration Judge Walter A. Dur-

ling, Jr. ("IJ").[2] Pet. Brief at 2; R. at 200–79. The IJ also received into evidence INS charging documents, Purveegiin's asylum application, letters, and background materials from the United States Department of State and Amnesty International on Mongolia. Pet. Brief at 5; R. at 155–56, 197–98, 201.

At the hearing, Purveegiin testified that the Mongolian Ambassador's son drugged him and stole his legal documents and bank card. R. at 233. Following this incident, Purveegiin became short-tempered and stopped attending art school. R. at 237–38. He also testified that his mail was opened at the United Nations Consulate, R. at 241, and that he suspected his telephone was wiretapped. R. at 245–46.

Purveegiin testified that Mongolian Secret Service agents warned him he would be arrested for his anti-Communist remarks and for failing to pay the loan. R. 248–50, 251. He also testified that he received a threat of arrest from the Minister of Economy. R. at 251. Purveegiin described a letter he received from his mother stating that she was warned by an unnamed government official that Purveegiin would face "problems" if he continued to curse and fight with the Mongolian United Nations representative. R. at 251–53, 255–59 (translator read letter into the record). Purveegiin explained that his mother's letter also alluded to the house arrest of his former employer and co-workers for assisting him in New York. R. at 259–60. Purveegiin testified that the Foreign Minister will have him arrested because "I don't like [Mongolian Party people] and I tell him openly." R. at 262.

Purveegiin testified that he suspected the Mongolian Government was involved in his father's death of food poisoning in 1995. R. at 265–66. He contends that he faces arrest, not for his outstanding loan,

---

**2.** The IJ conducted several preliminary hearings, see R. at 159–168 (July 24, 1997), R. at 169–175 (August 21, 1997), R. at 176–183 (September 16, 1997), R. at 184–193 (September 30, 1997), and R. 194–199 (October 27, 1997). Purveegiin's testimony began and ended on November 14, 1997. See R. at 200–279.

but because he told politically influential members of the Communist Party that he would "struggle" against them. R. at 268–70.

On November 25, 1997, the IJ issued a written opinion denying Purveegiin's application for asylum and withholding of deportation. R. at 150–58. Although the IJ determined that Purveegiin's fears were subjectively genuine and credible, R. at 153, he found that Purveegiin failed to establish that he would face persecution based on his political opinion. R. at 154–57. The IJ referred to documents from the State Department and Amnesty International which "did not indicate that it is a crime to criticize the government, politically or otherwise." R. at 157. Because the IJ found that Purveegiin did not sustain his burden, he did not consider whether Purveegiin's convictions would also make him ineligible for asylum relief.

On December 17, 1997, Purveegiin (represented by counsel, *see* R. at 115, 134) appealed the IJ's decision to the BIA, R. at 121–23, 131–34. *See also* R. 73–86 (Pet. Brief).

On June 30, 1998, the BIA affirmed the IJ's findings and denied Purveegiin's application for asylum and withholding of deportation.[3] R. at 49–54. The BIA determined that Purveegiin failed to establish past persecution or that Purveegiin had a well-founded fear of future persecution. R. at 51–52. Instead, the BIA found that Purveegiin's fear of persecution was based on a financial or personal dispute and, as such, did not encompass the statutory grounds available for asylum or withholding of deportation. R. at 52.

On July 10, 1998, Purveegiin filed a claim with the INS for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Torture Convention"), Dec. 10, 1984, art. 3, 23 I.L.M. 1027 (1984), as modified, 24 I.L.M. 535 (1985), ratified by the United States on Oct. 21, 1994, 34 I.L.M. 590, 591 (1995).[4] *See* Gov't Memo at 5–6; *see also* R. at ¶ 3 & Exhibit B at 1–2.

### C. Petition for a Writ of Habeas Corpus

On September 15, 1998, the Court received Purveegiin's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Pet.").[5] Venue is proper in the Southern District of New York, notwithstanding Purveegiin's current confinement at a Pennsylvania county jail, because the INS commenced its proceedings against Purveegiin while he was in custody in New York City.[6] R. at 507.

Liberally construing petitioner's prolix claims,[7] he appears to challenge the validity of his state court convictions, alleges bias on the part of the state courts and INS officials based on his skin color, and contends that he presented sufficient evidence of persecution to warrant a grant of

---

3. On January 5, 1999, the BIA denied Purveegiin's motion dated November 19, 1998, to reopen the appeal as time-barred pursuant to 8 C.F.R. § 3.2(c)(2) (1998) (motion to reopen must be filed not later than 90 days after the date of the BIA decision). R. at 01–03.

4. The INS only recently established procedures for raising a claim under the Torture Convention. *See* 8 C.F.R. § 208.18 (1999); 64 Fed.Reg. 8478 (Feb. 19, 1999) (amending 8 C.F.R. Parts 3, 103, 208, 235, 238, 240, 241, 253, 507) (corrections at 64 Fed.Reg. 9435 (February 26, 1999) and 13881 (March 23, 1999)).

5. To the extent Purveegiin challenges the conditions of his confinement, those claims are not the proper subject of this petition challenging the denial of Purveegiin's asylum and withholding of deportation application. Purveegiin has filed a civil action in the United States District Court for the Eastern District of Pennsylvania challenging the conditions of his confinement at Berks and York County Jails under docket number 99–2178.

6. The INS does not dispute that venue is proper here. Indeed, the INS argues that Edward J. McElroy, the New York District Director for the INS is the proper respondent. R. at n. 1.

7. Except for Purveegiin's BIA brief (prepared by counsel), petitioner's pro se submissions are convoluted and often unintelligible.

asylum or withholding of deportation. Pet. at 3–7. The INS argues, in essence, that the Court lacks jurisdiction to review Purveegiin's petition because his claim under the Torture Convention is presently pending before the BIA. Gov't Memo at 7–11. This argument, however, is only partially accurate. The petition is premature only as to the Torture Convention claim, a claim which is distinct from asylum or withholding of deportation as discussed below.

## II. Discussion

### A. Exhaustion of Administrative Remedies

 An alien may challenge his detention while in federal custody by seeking habeas corpus relief pursuant to 28 U.S.C. § 2241, if the applicant has exhausted all available administrative remedies before commencing the action in federal court. *See, e.g., M.G. Anonymous v. INS*, No. 96 Civ. 5162, 1996 WL 648975, at *1 (S.D.N.Y. Nov. 7, 1996) ("Individuals appealing a denial of asylum by INS may only file suit in federal court after they have exhausted their administrative remedies by obtaining a final denial of their asylum applications from the BIA."), *aff'd*, 122 F.3d 1055 (2d Cir.), *cert. denied*, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997); *Kashani v. Nelson*, 793 F.2d 818, 826 (7th Cir.1986); *see also Howell v. INS*, 72 F.3d 288, 291 (2d Cir.1995); *Zambra v. McElroy*, No. 98 Civ. 3515, 1999 WL 163565, at *2 (S.D.N.Y. Mar. 24, 1999) (citing cases). Here, the BIA recently reopened Purveegiin's case in order to consider the Torture Convention claim. Pet. at 6, ¶ 12(c)(iii); Gov't Memo at 5–6. Therefore, the Torture Convention claim is not ripe for review.[8]

However, Purveegiin's grounds concerning the denial of his application for asylum

and withholding of deportation are fully exhausted since he has obtained a final decision from the BIA. R. at 49–54; *see also* R. at 01–03. Therefore, I shall consider the merits of Purveegiin's petition based on these grounds.

### B. Legal Framework

### 1. Political Asylum

An applicant for asylum, *see* Section 208(a) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1158(b) (1996), must establish that he is a "refugee" within the meaning of Section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42) (A)(1994). *INS v. Cardoza–Fonseca*, 480 U.S. 421, 428, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Abankwah v. INS*, 185 F.3d 18, 22 (2d Cir.1999). "Refugee" is defined, in relevant part, as a person who is unable or unwilling to return to his native country because of a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b).

 A "well-founded fear of persecution" contains both a subjective and an objective element. *Cardoza–Fonseca*, 480 U.S. at 430–31, 450, 107 S.Ct. 1207 (Blackmun, J., concurring). The subjective element "may be based on the applicant's reaction to events that impinge on him personally; but to make it a well-founded fear, there must be other proof or objective facts that lend support to the applicant's subjective fear." *Melendez v. United States Dep't of Justice*, 926 F.2d 211, 215 (2d Cir.1991) (citation omitted). The subjective component may be satisfied by the applicant's credible testimony that he

---

**8.** A Torture Convention claim is distinct from a request for asylum (which is discretionary) or withholding of removal (which is mandatory). Under the Torture Convention, an alien may not be deported to a country where he would be subject to torture, defined in part as the intentional infliction of severe pain or suffering by or at the instigation of a public

official. 8 C.F.R. § 208.18(1). The Torture Convention does not limit relief based on the statutory grounds set forth in 8 U.S.C. § 1101(a)(42) as required for asylum, nor does it exclude persons who assisted in the persecution of others as set forth in 8 U.S.C. § 1158(b)(2)(A) and 1231(b)(3)(B). *See, e.g.,* 64 Fed.Reg. 8478, 8478–79.

fears persecution. *Abankwah,* 185 F.3d at 22.

The objective element is met by showing that the applicant's fear is "grounded in reality." *Melendez,* 926 F.2d at 215. "To this end, an applicant must present credible, specific, and detailed evidence—whether by [his] own testimony or corroborating proof-that a reasonable person in [his] position would fear persecution if returned to [his] native country." *Abankwah,* 185 F.3d at 22; *see also So-telo–Aquije v. Slattery,* 17 F.3d 33, 36 n. 2 (2d Cir.1994); *Melendez,* 926 F.2d at 215; *see also* 8 C.F.R. § 208.13(a)(1998).

It is well-settled that even if an applicant for asylum establishes that he is a "refugee" within the meaning of the Act, the decision whether to grant asylum is still within the discretion of the Attorney General.[9] 8 U.S.C. § 1158(b); *Cardoza–Fonseca,* 480 U.S. at 428 n. 5, 441, 443, 107 S.Ct. 1207; *Abankwah,* 185 F.3d at 22 ; *Zhang v. Slattery,* 55 F.3d 732, 738 (2d Cir.1995); *Osorio v. INS,* 18 F.3d 1017, 1021 (2d Cir.1994).

### 2. Withholding of Deportation

By contrast, withholding of deportation under Section 243(h)(1) of the Act, 8 U.S.C. § 1231(b)(3)(A)(1996) (formerly 8 U.S.C. § 1253(h)(1)), is mandatory if an applicant establishes that there is a clear probability that his " 'life or freedom would be threatened in [a] country on account of' a protected ground," unless a statutory exception applies. *Abankwah,* 185 F.3d at 22; *see also INS v. Aguirre-Aguirre,* 526 U.S. 415, 119 S.Ct. 1439, 1443, 143 L.Ed.2d 590 (1999).

Although "asylum and withholding of deportation are two distinct forms of relief," *Cardoza–Fonseca,* 480 U.S. at 429 n. 6, 107

S.Ct. 1207, they are "closely related and appear to overlap." *Carranza–Hernandez v. INS,* 12 F.3d 4, 7 (2d Cir.1993) (quotation marks and citation omitted); *see also Abankwah,* 185 F.3d at 21–22.

An applicant seeking the discretionary grant of asylum must meet a lower standard of proof than the standard required of an applicant who seeks entitlement to withholding of deportation. *Carranza–Hernandez,* 12 F.3d at 7; *see also Cardoza–Fonseca,* 480 U.S. at 443–50, 107 S.Ct. 1207; *Zhang,* 55 F.3d at 738. Therefore, an applicant's failure to demonstrate eligibility for asylum automatically leads to a denial of withholding of deportation. *See Abankwah,* 185 F.3d at 22; *Zhang,* 55 F.3d at 738; *Carranza–Hernandez,* 12 F.3d at 7.

### C. Scope of Judicial Review

Whether an applicant has established a well-founded fear of persecution in order to be eligible for asylum or mandatory withholding of deportation is reviewed under the substantial evidence test. *Abankwah,* 185 F.3d at 22–23 (citing *Osorio,* 18 F.3d at 1022; *Melendez,* 926 F.2d at 218). Similar to review of other agency actions, the substantial evidence test accords "substantial deference" to the BIA's findings of fact. *Melendez,* 926 F.2d at 216–17.[10]

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Abankwah,* 185 F.3d at 23 (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). As such, the Court's scope of review is "exceedingly narrow." *Carranza–Hernandez,* 12 F.3d at 7; *INS v. Elias-Zacarias,* 502

---

**9.** The Attorney General has vested the BIA with the power to exercise the "discretion and authority conferred upon the Attorney General by law." *INS v. Aguirre–Aguirre,* 526 U.S. 415, 119 S.Ct. 1439, 1445, 143 L.Ed.2d 590 (1999); *see also* 8 C.F.R. § 3.1(d)(1998).

**10.** "[T]he ultimate denial of asylum ... is reviewed for abuse of discretion, the threshold finding of fact of whether the [applicant] has established a well-founded fear of persecution qualifying that person for refugee status is reviewable under the substantial evidence test." *Melendez v. United States Dep't of Justice,* 926 F.2d 211, 218 (2d Cir.1991).

U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). A review of the record reveals that the BIA's decision denying Purveegiin's application for asylum and withholding of deportation was supported by substantial evidence.

### 1. Purveegiin Failed to Establish a "Well–Founded Fear of Persecution" Based on Political Opinion

■■ Purveegiin failed to establish a "well-founded fear of persecution" based on political opinion. Purveegiin testified that he spoke out against the MPRP and that this speech, rather than his outstanding loan, will subject him to arrest in Mongolia. R. at 262, 268–71. These allegations, standing alone, fail to rise to the level of a "well-founded fear of persecution" based on political opinion. *Melendez*, 926 F.2d at 215.

■■ The BIA's determination that Purveegiin failed to establish the requisite fear of persecution based on his political opinion was reasonable in light of the record. Although Purveegiin need not provide "affidavits, expert witnesses and extensive documentation," *Abankwah*, 185 F.3d at 26, "he must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias–Zacarias*, 112 S.Ct. at 817.

Nothing in Purveegiin's testimony nor in the background materials submitted as documentary evidence established that Mongolia has a pattern of persecuting groups on account of political opinion similar to those expressed by Purveegiin. *Osorio*, 18 F.3d at 1031–32; 8 C.F.R. § 208.13(b)(2); R. at 93–105, 333–38. Here, Purveegiin argues that he is unable to make such a showing since he is the first art student to ever study in United States. Pet. Brief at 8. However, Purveegiin need not show that art students who study abroad are persecuted for their political beliefs, but rather that there is a pattern or practice of persecution against Mongolian citizens who denounce or contradict the MPRP based on their political opinion.

Neither the Amnesty International Reports on Mongolia, *see* R. at 93–105, 285–293, nor the Department of State's *Country Reports on Human Rights Practices for 1996*, *see* R. at 333–38, support Purveegiin's claim that he would face persecution on account of his political beliefs. In fact, the reports indicate that although the MPRP held power for 75 years, it was voted out of power in June 1996. Although the MPRP regained power in later elections, *see* R. at 91, 294, this alone is insufficient to support Purveegiin's claim of future persecution. Notwithstanding the intolerable prison conditions outlined in both reports, there is no indication that these conditions exist for the purpose of persecuting citizens expressing anti-MPRP sentiments. Accordingly, Purveegiin's fear of persecution on account of his political opinion was not "well-founded." Given the narrow scope of the Court's review, the BIA's decision must be sustained.

### 2. The INS Did Not Abuse Its Discretion in Failing to Grant Asylum

■■ Even if Purveegiin had established a "well-founded fear of persecution" based on his political opinion, petitioner would not be entitled to the discretionary grant of asylum. *Cardoza–Fonseca*, 480 U.S. at 428 n. 5, 107 S.Ct. 1207 ("the Attorney General is not required to grant asylum to everyone who meets the definition of refugee."). Notwithstanding Purveegiin's artistic talents, *see* R. at 359–64, 370, 372–73, his criminal conduct during 1993–1997 would provide a rational basis for the Attorney General's exercise of discretion. *See Dhine v. Slattery*, 3 F.3d 613, 619 (2d Cir.1993) (INS did not abuse discretion in denying asylum to applicant who had seven convictions in seven years). The INS may consider petitioner's criminal history in determining whether he is eligible for asylum. *Id.* at 619. Here, Purveegiin's six convictions over four

years—even six misdemeanors—"easily furnish a rational basis for the Attorney General's exercise of discretion. The Attorney General is not obliged to shelter people from despotic persecution abroad so that they may enjoy lawful imprisonment in the United States." *Id.*

### 3. Petitioner Not Entitled to Withholding of Deportation

Because Purveegiin failed to satisfy the standard required for asylum, I need not reach the question of whether Purveegiin is entitled to withholding of deportation. "An applicant's failure to demonstrate eligibility for asylum automatically leads to a denial of withholding of deportation" *Abankwah,* 185 F.3d at 22; *Zhang,* 55 F.3d at 738.

### III. Bias and Validity of State Convictions

The petition also presents the following additional claims for relief. First, Purveegiin contends that the state court, the INS and the BIA were biased against him based on his "skin color." Pet. at 3–5. There is no evidence in the record, including a thorough review of the hearing transcripts, which supports such a claim against the INS, the IJ or the BIA. There is no basis for suspecting that INS officials, the IJ or the BIA had any bias towards Purveegiin, and that such purported bias was a factor in the denial of his application for asylum or withholding of deportation.[11] In fact, the record shows that Purveegiin was given every opportunity to prove his claims. Thus, these allegations of bias are dismissed as conclusory.

■ Second, to the extent Purveegiin seeks to challenge the validity of his state court convictions, such claims must be dismissed. A petition challenging the denial

of asylum and withholding of deportation pursuant to § 2241 is not the proper forum to challenge a petitioner's state court convictions. Any such challenge must be raised by a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. However, before seeking federal review, Purveegiin must satisfy the prerequisites set forth in 28 U.S.C. §§ 2244 and 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. *See also Maleng v. Cook,* 490 U.S. 488, 490–91, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (discussing incustody requirement); *Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (discussing exhaustion of state remedies); *Ross v. Artuz,* 150 F.3d 97 (2d Cir.1998) (discussing statute of limitations).

### IV. Conclusion

For the reasons set forth above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DENIED. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253. Any appeal from this Order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of Court is directed to close this case.

---

11. During most of the INS proceedings, Purveegiin was represented by counsel and any purported bias in the proceedings, whether implied or explicit, certainly would have been raised by his attorney.