

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2006

# Dong v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4473

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Dong v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1638.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1638

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

No. 04-4473

_____

ZENG CHENG DONG,

Petitioner

v.

ALBERTO GONZALES[*], ATTORNEY GENERAL OF

THE UNITED STATES,

Respondent.

_____

On Petition For Review from a Final Order

of The Board of Immigration Appeals

AGENGY NO. A70-892-643

_____

Submitted Pursuant to LAR 34.1(a)

January 9, 2006

_____

[*] Attorney General Alberto Gonzales has been substituted for former Attorney General John Ashcroft, one of the original respondents in this case, pursuant to Fed. R. App. P. 43(c).

_____

Before: BARRY and AMBRO, Circuit Judges, and

DEBEVOISE**, Senior District Court Judge

(Filed: February 6, 2006)

_____

OPINION OF THE COURT

_____

DEBEVOISE, Senior District Judge

Zeng Cheng Dong petitions for review of the decision of the Board of Immigration

Appeals ("BIA") denying his claims for asylum, withholding of removal and protection

under the Convention Against Torture ("CAT"). The Immigration Judge ("IJ") presiding

over Dong's case denied these claims based on her determination that Dong was not

credible. The BIA affirmed the decision without opinion. Because the IJ's credibility

determination is supported by substantial evidence, we will deny the petition.

## I. **Background and Procedural History**

There are many inconsistencies in Dong's recital of the events forming the basis of

his claims as they are set forth in his 1-589 asylum application form, his affidavit that

** Honorable Dickinson R. Debevoise, Senior District Judge for the District of New Jersey, sitting by designation.

2

accompanied the 1-589 Form and his testimony. A starting point is the account Dong

gave in his testimony on direct examination before the IJ who conducted the March 10,

2000 merits hearing.[1]   As recited in that testimony:

Dong was born in 1956 in Fuzhou Province in the People's Republic of China.

His wife was born in 1957 in Fujian Province. They began living together in December

1977, but their marriage was not registered until November, 1980 because they had been

underage. Before that date they had had a boy, and at the time of registration the wife

was told that she would have to have an IUD inserted. Because Dong and his wife

wanted more children, they had the IUD removed by a private doctor. Thereafter the wife

became pregnant with a second child, a development they discovered in February 1982.

The second child was born on December 28, 1982.

Someone reported the birth to officials of the government. Officers came to

Dong's home and told his wife she would have to go for a sterilization procedure. They

used a rope to tie her hands, put her in a car and took her to a hospital for the sterilization.

Before the procedure began, the wife asked if she could use the restroom. She proceeded

to the restroom and when so doing she escaped undetected from the hospital. She ran to

the village of Niantong where she continued to live while Dong worked in the

construction business in Fuzhou City. A third child was born to the couple in February

---

[1] Immigration Judge Malloy, who issued the decision in this case, did not conduct the March 10, 2000 merits hearing; rather she relied upon a transcript. Judge Malloy conducted an adjourned session of the hearing held on April 1, 2002 at which the asylum officer testified.

1984 in the village of Niantong.

On May 4, 1984 Dong and his wife returned to his hometown.  The following day officials came to his home and took his wife away for a successful sterilization.  He and his wife were fined 2000 yuan; he could not register the child in the household registration book because it was an excessive birth, and for the same reason they had to pay higher fees for school.

Dong arrived in the United States on August 20, 1992 via Mexico.  Asked why he waited until 1992 and why he chose the United States, Dong responded because of the lifestyle and financial reasons and that it was very difficult to survive in China.

On June 17, 1993 Dong filed an asylum application in which he claimed to have been mistreated in China on account of his political opinion.  The details set forth in this application differed substantially from the account Dong gave on his direct examination, including the statement that after the official learned of the third birth they forced him to undergo sterilization.  His basis for relief was the government's family planning policy.  On January 14, 1997 an asylum officer interviewed Dong.  He stated that he feared persecution in China on account of his religion and because he opposed the government's family planning policy.  In his asylum application he denied that he had ever been arrested, but he informed the asylum officer that he had been arrested and detained for three days because of his participation in religious gatherings.  When the asylum officer asked Dong about his asylum application, Dong acknowledged that it had been read to

4

him and that it was truthful. He explained the absence of a reference to religious persecution as a failure on the part of the travel agent to include it.

On January 15, 1997 the INS placed Dong in deportation proceedings, charging him with entering the United States without inspection. He admitted the allegations, conceded his deportability and announced his intention to seek asylum, withholding of deportation, and CAT protection. He was the only witness to testify at his March 10, 2000 merits hearing, at which he testified as described above. His testimony, including that which was developed on cross-examination, varied considerably from his statements to the asylum officer. Dong disavowed certain of his statements to the asylum officer and attributed some discrepancies to possible interpreter mistakes.

The asylum officer was called to testify at an adjourned April 1, 2002 hearing. She testified that she questioned Dong about his asylum application and that he made no substantive changes in it and affirmed that its contents were true. She further testified that she found Dong not credible and his story contradictory and confusing. Dong failed to file a corrective affidavit in spite of several opportunities to do so.

On October 21, 2002, the IJ denied Dong's asylum, withholding of removal and CAT applications. Her opinion included a comprehensive summary of Dong's testimony on direct and cross-examination, detailing his attempts to explain the numerous inconsistencies in the accounts he had given in his asylum application and supporting affidavit, in his statement to the asylum officer and in his hearing testimony. The IJ

5

observed that "the court has before it three versions of respondent's claim for asylum" (A. 39). The account recited in the affidavit submitted with Dong's application and at various proceedings that followed constituted one version. However, the IJ did not give much weight to it because it "does seem to be lacking in details and does have a glaring error where it states that respondent was sterilized and that error was pointed out by respondent's attorney at the first master calendar." (A. 41-42).

The IJ relied on the other two versions of Dong's claims, his courtroom testimony and the testimony provided at the asylum interview. She noted a series of contradictions and inconsistencies between these two versions. "For example, [ ]stating that he left in 1982 for the family planning reasons and then stating that he left because of the religious crackdown. It was interesting to see respondent's attempts to reconcile both of the inconsistent answers. And this was repeated over and over again throughout the respondent's testimony." (A. 45).

The IJ found that Dong failed to produce documents to show that his wife had been sterilized or that an IUD was inserted, finding that the x-rays Dong submitted were not shown to portray his wife. The IJ noted that Dong "also failed to submit any evidence that he is a member of the Christian church, that he attends church, that he holds any particular religious beliefs" (A. 46), concluding "[t]here is nothing in his application or any documents submitted that would demonstrate that respondent would be persecuted for any religious reasons." (A. 47).

6

Based on the lack of corroborative evidence and because of the numerous inconsistencies in Dong's testimony, the IJ held that Dong had not established that he had suffered past persecution or that he would suffer future persecution on account of any of the five enumerated grounds and that, therefore, he had failed to establish his eligibility for asylum. It followed that Dong had also failed to establish his eligibility for withholding of deportation to the People's Republic of China. Finally, the IJ held that Dong had failed to establish that he would be tortured for any reason should he return to that country and thus had failed to establish his eligibility for relief under the CAT.

Dong petitions for review of the BIA's order affirming without opinion the IJ's decision.

## II. Jurisdiction and Standard of Review

Under 8 U.S.C. § 1252(a), we have jurisdiction to hear a petition for review from a final order of the BIA. When the BIA affirms an IJ without opinion, "we review the IJ's opinion and scrutinize its reasoning." Smriko v. Ashcroft, 387 F.3d 279, 282 (3d Cir. 2004) (internal quotation marks and citation omitted). In asylum cases, we must uphold the agency's factual findings if they are supported by substantial evidence. Singh-Kaur v. Ashcroft, 385 F.3d 293, 296 (3d Cir. 2004). That is, the denial of asylum "can be reversed only if the evidence presented by [the Petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); see also Abdille v. Ashcroft, 242 F.3d 477,

7

483-84 (3d Cir. 2001) ("[T]he [agency]'s finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it."). Denials of applications for withholding of deportation are also reviewed under the substantial evidence test. Melendez v. United States Dept. of Justice, 926 F.2d 211, 218 (2d Cir. 1991). Adverse credibility determinations, like other factual findings in immigration proceedings, are reviewed under the substantial evidence standard. Mulanga v. Ashcroft, 349 F.3d 123, 131 (3d Cir. 2003).

### III. Discussion

The Attorney General and his delegates may grant asylum to any alien who qualifies as a refugee under the Immigration & Nationality Act ("INA"). 8 U.S.C. § 1158(b)(1). A refugee is an alien who is "unable or unwilling" to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42(A). "Aliens have the burden of supporting their asylum claims through credible testimony." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). "Testimony, by itself, is sufficient to meet this burden, if 'credible.'" Id. (quoting 8 C.F.R. §208.13(a)). To establish eligibility for asylum, an applicant must demonstrate past persecution by substantial evidence or a well-founded fear of persecution that is both subjectively and objectively reasonable. Lukwago v. Ashcroft, 329 F.3d 157, 177 (3d Cir. 2003).

8

Withholding of deportation is available under INA section 241(b)(3), 8 U.S.C. § 1231(b)(3). That section provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in such country on account of the alien's race, religion, nationality, membership in a particular social group, or political opinion." § 1231(b)(3); see also INS v. Stevic, 467 U.S. 407, 411 (1984). In order to be eligible for that relief, an alien must demonstrate "a clear probability" of persecution, i.e., a showing that it is "more likely than not" he will be persecuted upon return to his home country. INS v. Cardoza-Fonseca, 480 U.S. 421, 429, 448 (1987); Li Wu Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001); 8 C.F.R. § 208.16(b)(2001). Because this standard is more stringent than the "well-founded fear" of persecution standard required for asylum, it follows that an alien who fails to demonstrate eligibility for asylum also fails to satisfy the more stringent requirements of withholding of removal. Janusiak v. INS, 947 F.2d 46, 47 (3d Cir. 1991).

Dong's principal ground for asylum is past persecution and a well-founded fear of persecution on account of his opposition to his country's family planning policies, culminating in the sterilization of his wife. He relies on §601(a) of the September 30, 1996 Illegal Immigration Reform and Immigrant Responsibility Act of 1996, enacted as Division C of the Departments of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1997, Pub. L. No. 104-208, 110 Stat. 3009-689 (1996) ("IIRIRA"). Section 601(a) of the IIRIRA provides:

9

For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

Sitting en banc, the BIA applied this provision to circumstances remarkably similar to those which prevail in the instant case. Matter of C-Y-Z, BIA Interim Decision 3319 (June 4, 1997). The petitioner, a citizen of the People's Republic of China, was married in China in 1986 and was the father of three children, the last a son born in 1991. He and his wife were opposed to China's family planning requirements. After the birth of his first child, his wife was forced to obtain an IUD. The device was removed and when the wife became pregnant again she was ordered to undergo an abortion. She hid until she delivered a third child, after which she was sterilized against her will. Petitioner left China eighteen months later, arrived in the United States in 1993 and applied for asylum.

Reversing an IJ decision that did not make an adverse credibility finding but denied asylum, the BIA majority opinion held as follows: i) citing its prior decision in Matter of X-P-T, BIA Interim Decision 3299 (Dec. 3, 1996), an alien who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for resistance to a coercive population control program, has suffered past persecution on account of political opinion and qualifies as a refugee within the amended

10

definition of that term under § 101(a)(42) of the Act; ii) the spouse of a woman who has been forced to undergo an abortion or sterilization procedure can thereby establish past persecution; iii) a spouse having adequately established that he suffered past persecution is entitled to the regulatory presumption that he has a well-founded fear of future persecution under 8 C.F.R. § 208.13(b)(1); iv) the alien who has thus established past persecution does not have the additional burden of proving a well-founded fear of future persecution by evidence that the involuntary sterilization was carried out in such a way as to amount to an "atrocious form" of persecution; rather "[t]he regulatory presumption may be rebutted only by a showing, by a preponderance of the evidence, that since the time the persecution occurred, conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of persecution if he returned to his home country." The BIA concluded that the applicant had demonstrated eligibility for asylum and withholding of deportation.

The majority opinion in In re C-Y-Z was accompanied by a concurring opinion, a concurring and dissenting opinion, and a dissenting opinion. Our court has not expressed an opinion about certain of the BIA's holdings. Nevertheless, assuming In re C-Y-Z governs the instant case, the IJ's credibility finding precludes applying In re C-Y-Z to Dong. Finding Dong's testimony unbelievable, the IJ did not credit his account, or accounts, of his wife's subjection to an IUD or forced sterilization. Without credible evidence that the wife was subjected to those procedures, there is no basis for Dong's

11

claim of asylum, withholding of deportation or relief under the CAT.

Dong challenges the IJ's credibility determination, arguing that any inconsistencies in his testimony were minor or constituted minor omissions relating to unimportant facts. As such, Dong contends, they will not support an adverse credibility finding. Alvarado-Carillo v. INS, 251 F.3d 44, 56 (2d Cir. 2001); Osorio v. INS, 99 F.3d 928, 931 (9th Cir. 1996).

We have reviewed this proceeding in which Dong provided information. The glaring inconsistencies and contradictions provide substantial evidence to support the IJ's finding that Dong was not credible. These inconsistencies and contradictions appeared not only in his accounts of the events relating to the birth of three children, they also appeared in his belated claim that he was persecuted for his religious beliefs. The documentary evidence fails to remedy the failure of proof.

## IV. Conclusion

There was sufficient evidence to support the IJ's adverse credibility finding, and consequently Dong has failed to produce sufficient credible evidence to establish either past persecution or an objectively reasonable, well - founded fear of future persecution in China. Dong does not seriously even argue in his petition that there are substantial grounds for believing that, were he returned to China, he would be in danger of being subjected to torture.[2] We find no error in the BIA's affirming the IJ's decision.

_____

[2] We note that the record discloses that Dong's wife and three children continue to reside in China, apparently without difficulty, and that all three children attend school and have been

12

Consequently we will dismiss the petition.

registered in the household registry since 1985.